HAMITER, Justice.
As sole and absolute owner of the Battistella Canal situated in Plaquemines Parish one Louis Battistella, on October 7, 1947, granted in writing to the Department of Highways of the State of Louisiana a right of way over and through the canal for the purpose of making highway improvements. In keeping with the grant a dirt embankment (containing a twenty-four inch culvert) for supporting a paved road was constructed across the waterway, thereby effectively preventing navigation to and from the head of Battistella Canal at Empire where plaintiff (Buras Ice Factory, Inc.) and its predecessor (Peoples Utilities, Inc.) owned and operated an ice business.
Asserting that the blocking of such canal has rendered the ice plant a total loss and has greatly depreciated the value of the lot on which it is situated, plaintiff instituted this suit on January 25, 1950 against the Department of Highways to recover damages of $65,000. In this connection it alleged in the original petition: “That the said Battistella Canal is a navigable waterway, used principally and primarily by professional fishermen for the purpose of bringing their boats to your petitioner’s ice plant, to purchase and load ice, used in the oyster, shrimp and fishing industry.
* * 5ji * * *
“That said ice plant was constructed solely for the purpose of supplying boats with ice used in the oyster, shrimp and fishing industry, and that all ice sold from said ice house was sold to boats that came to its wharf for the purpose of purchasing and loading ice.
“That said plant is constructed of concrete and tile, and cannot be moved. That the building, machinery, wharf and roadway are a total loss, and have no value because of the blocking of said canal. That the blocking of said canal has depreciated the value of the lot measuring two hundred feet (200') by two hundred sixty-five feet (265'), on which said plant is situated. * * * ”
In a supplemental petition plaintiff further alleged that, as shown by the title to the property, it acquired and has the right of use to and a servitude on the Battistella Canal.
Answering, the defendant denied the existence of the alleged servitude and any liability to plaintiff. Affirmatively, it averred that it held a “right of way for said highway over the said Battistella Canal * * * with the right to fill said canal as respondent has done * *
*165 After trial of the merits there was judgment in plaintiff’s favor of $50,000. Defendant is appealing.
The position of appellant, to quote from the brief of its counsel, is: “ * * * At the time that the right of way deed was executed there was nothing whatsoever of record in the conveyance records of the Parish of Plaquemines showing, or tending to show, that the Battistella Canal was subject to any servitude or other right in favor of the plaintiff or plaintiff’s property. As of the date that the right of way deed was granted by Louis Battistella to the defendant, Louis Battistella had the absolute right to fill up the canal and thereby close it to navigation without being in any way liable to the plaintiff for any adverse effects that such closing of the canal might have upon the plaintiff or the plaintiff’s property.” In this connection appellant invokes and relies on the legal principle that innocent third parties who deal on the faith of the public records are protected thereby.
Appellee does not dispute this legal principle, well recognized in our codal law and jurisprudence. See Revised Civil Code Articles 2254, 2264, 2266; McDuffie v. Walker, 125 La. 152, 51 So. 100; Gonsoulin v. Sparrow, 150 La. 103, 90 So. 528; Derryberry v. Matterson, 193 La. 624, 192 So. 78; Quatre Parish Co. v. Beauregard Parish School Board, 220 La. 592, 57 So.2d 197. Primarily, it challenges appellant’s contention with respect to the disclosures (or lack thereof) on the Conveyance Records of Plaquemines Parish, it asserting that they abundantly establish its right of use to and a servitude on the Battistella Canal. Consequently, a consideration of those records, insofar as pertinent here, becomes necessary.
Our examination reveals that in October, 1929 Arthur Battistella owned the privately dredged Battistella Canal and all land under and immediately surrounding it, including the small tract on which he then operated the ice factory in question. He was the father of'Louis Battistella who some years later became the absolute owner of such canal (by inheritance on the father’s death and by purchase of his mother’s- community interest) and who granted the highway right of way to appellant.
On October 14, 1929 Arthur Battistella sold to appellant’s ancestor in title, John E. Pottharst, Sr., the ice factory property (plant and land) “ * * * and all ways, rights, privileges, servitudes and advantages thereunto belonging or in anywise appertaining * * * ”, the transaction including an assignment of the vendor’s good will in the operation of the ice plant in the area between Myrtle Grove and Venice and an agreement that he would refrain from reentering into the ice business. Within two months thereafter Pottharst conveyed the property -thus acquired to Peoples Utilities, Inc., he receiving therefor four hundred *167 shares of the capital stock of the purchasing corporation of which he was president.
On May 19, 1930 Arthur Battistella sold and conveyed to C. B. Foster Packing Company, Inc. a large tract of land fronting on the northwest or upper bank of the Battistella Canal. On the same date those parties, together with Peoples Utilities, Inc. and one Joseph Hingle, entered into an “Act of Agreement and Boundary Settlement”, the purpose of which was to establish the boundaries of the respective properties belonging to them and to make certain stipulations regarding the use thereof. The instrument, as well as an attached survey plat prepared by Civil Engineer R. P. Rordam and dated April IS, 1930, disclosed that the ice factory property was then separated from the Battistella Canal by the C. B. Foster Packing Company land. However, the agreement provided: “ * * * the C. B. Foster Packing Company Inc. hereby grants to the Peoples Utilities Co. Inc., a right of passage and easement 2ff in width from the lower line of the property hereinabove described as the property of the Peoples Utilities Co. across the property of the C. B. Foster Packing Co., Inc., to the upper bank of the Canal Basin of Battistella’s Canal, being designated on the said plat of the said R. P. Rordam, as follows:
“ ‘Twenty ft. easement to canal for Peoples Utilities Co.’ ”
The agreement of May 19, 1930 also stipulated: “It is expressly understood and agreed that the title in and to the bottom of Battistella’s Canal and Basin remains and continues the property of Arthur Battistella * * *. Said Arthur Battistella hereby agrees to maintain and to keep clean and ready for use at his own expense the said Battistella’s Canal for a period of one year from and after the date of this Act. It is hereby agreed by and between the parties that from and after the expiration of one year from the date of this act that the cost of maintaining and keeping clean and ready for use the said Battistella’s Canal shall be borne proportionately by the various parties owning the property contiguous to the said canal in the ratio that the number of feet front on said canal owned by the said parties bears to the total frontage of said canal * * *.
^ ^ ^ ^ ^ ^
“Arthur Battistella further grants the right to C. B. Foster Packing Co. Inc., or its assigns the use without tolls of the said Battistella Canal, subject to purchaser’s obligation beginning one year after this date to pay its proportion of the cost of maintenance of said Canal as herein provided.”
By instrument of date June 28, 1933 C. B. Foster Packing Company, Inc. re-conveyed to Arthur Battistella the identical tract of land it had previously acquired from such vendee.
*169 On July 8, 1933 Arthur Battistella sold and conveyed to Peoples Utilities, Inc. (transferee of Pottharst) a portion of the land which he had recently reacquired from C. B. Foster Packing Company, Inc. The parcel was situated between the ice factory property and the canal (a strip across which the aforementioned twenty foot easement had previously been granted) and was identified on a plat attached to the deed as Lot AA. The instrument provided for a conveyance of the land, “together with all the rights, ways, privileges, servitudes, appertenances and improvements thereon, or in anywise thereunto belonging or appertaining * * It further recited that the “Act of Agreement and Boundary Settlement” dated May 19, 1930 was considered cancelled and void, except “ * * * wherein Joseph Hingle intervenes for the purpose of granting the parties hereto a right of way and * * * wherein the parties hereto acknowledge the boundary survey or boundary settlement * *
The defendant’s right of way deed was obtained from Louis Battistella, as above shown, on October 7, 1947.
The Buras Ice Factory, Inc., plaintiff herein and of which J. E. Pottharst, Sr., is president, acquired the property of Peoples Utilities, Inc. by an instrument dated November 18, 1949.
In August, 1952, more than four years after the date of defendant’s right of way grant and some nineteen months after this suit was instituted, there was executed and placed of record an “Act of Correction, Ratification and Confirmation”, the parties thereto being Louis Battistella, John E. Pottharst, Sr., Peoples Utilities, Inc. and Buras Ice Factory, Inc. This instrument, after describing the two parcels constituting the ice factory property that was originally obtained from Arthur Battistella, recited (among other things) the following: “Now, therefore, in order to clear up all doubt as to the rights of all owners of said parcels 1 and 2 to the use and enjoyment of said Battistella Canal, all parties to this act agree that it was the intention of said Arthur Battistella, deceased, and his successors in title, to convey to the owner or owners of said property, including the present owner of said parcels 1 and 2 the right of use of said Battistella Canal for the exclusive manufacture and sale of ice on said canal, and the right of all ice customers’ vessels to use said canal to purchase ice from John E. Pottharst, his successors or assigns * *
Of course, plaintiff (as against this defendant) does not rely on the last described instrument for the establishment by title of the claimed servitude on or right to use of the Battistella Canal. With respect thereto, to quote from the brief of its counsel, it shows: “ * * * Plaintiff’s right to the use of said canal was acquired by the three above referred to instruments *171 which were of record long before the Highway Department acquired its right of way from Mr. Battistella. The only purpose of this later agreement was to restate and recognize this long standing right, to acknowledge that this right had been actively exercised prior to the closing of the canal by the Highway Department and that by the closing of said canal Buras Ice Factory had lost the right to the use of said canal.”
The “three above referred to instruments”, on which plaintiff relies, are (1) the Battistella-Potteharst deed of October 14, 1929, (2) the “Act of Agreement and Boundary Settlement” of May 19, 1930, and (3) the Battistella-Peoples Utilities, Inc. deed of July 8, 1933.
Directing attention to the first and third of such instruments plaintiff contends that when Battistella therein assigned “all ways, rights, privileges, servitudes and advantages” belonging to the ice factory property he thereby transferred the canal servitude. Considered on its face the assignment undoubtedly related to any effective encumbrances against land owned by some one other than the vendor, Battistella; the latter was then also the owner of the canal, and no servitude of passage can exist against one estate in favor of another when both are owned by the same person.
But counsel for plaintiff argue that there existed an apparent sign of servitude between Battistella’s ice property and his canal which, by the above quoted language, was transferred pursuant to Revised Civil Code, Article 769. It reads: “If the owner of two estates, between which there exists an apparent sign of servitude, sell one of those estates, and if the deed of sale be silent respecting the servitude, the same shall continue to exist actively or passively in favor of or upon the estate which has been sold.” This argument overlooks the fact that the servitude of passage-claimed by plaintiff is of the discontinuous: type — needing for its exercise the act of' man (Revised Civil Code, Article 727)— which can be granted only by title. Revised' Civil Code Article 766; Cleris v. Tieman, 15 La.Ann. 316; Burgas v. Stoutz, 174 La. 586, 141 So. 67; Mallet v. Thibault, 212 La. 79, 31 So.2d 601. And when Battistella made the transfers to Pottharst and Peoples Utilities, Inc. no such servitude by title was in existence.
 Again, it is contended by plaintiff that the “right of passage and easement twenty feet in width”, granted in the agreement of May 19, 1930 to Peoples Utilities,. Inc. across the land of C. B. Foster-Packing Company, Inc., necessarily carried with it (in favor of the grantee) a right of use without tolls of the Battistella Canal. We do not agree. Obviously, this grant purposed only to provide a way of ingress and egress with respect to the ice factory and the canal’s upper bank. Besides, the *173 twenty foot easement was extinguished by confusion when Peoples Utilities, Inc. became the owner of the land on which it was originally established. Revised Civil Code, Article 783.
The contention most strongly urged by plaintiff is that when Arthur Battistella conveyed the ice factory properties as being bounded by the Battistella Canal (so shown by the three instruments relied on and by the attached plats), the fee of which waterway he owned, a servitude over and through such canal was granted by implication in favor of the grantee. In support of the contention its counsel cite Iseringhausen v. Larcade 147 La. 515, 85 So. 224 and James v. Delery, 211 La. 306, 29 So.2d 858.
These decisions are inapplicable here. They stand only for the well recognized principle that “ * * * when the owner of a tract of land subdivides it into lots, designates on the map or survey of the subdivision streets or roads, and then sells the property or any portion of it with reference to such map, he thereby creates by title a servitude of passage over the streets or roads as shown on the map. * * * ” In each of those cases it clearly appears that the servitude of passage therein recognized related to a public road for the benefit of purchasers of lots in the subdivision, so designated on the recorded surveyor’s plat. Here, however, the deeds and the attached plats in no manner indicate that the Battistella Canal was to be a public passageway for use by the owners of adjoining properties.
More nearly like the factual situation presented by the instant cause was that contained in Richardson v. Liberty Oil Co., 143 La. 130, 78 So. 326, 331, where a canal servitude was unsuccessfully claimed by an owner of land who had bought according to a plat which showed his property as being adjacent to the canal. Therein, we observed : “ * * * A railway company may sell land adjoining its right of way without dedicating or imposing servitudes upon the strip so described, in which it owns but a limited fee, and equally may a canal company, or a canal and road company, sell land adjoining the tract upon which its canal and road are constructed, and of which it is the full owner, without of necessity subjecting such tract to servitudes in favor of its vendees, or the public. * * * ”
We arrive at the conclusion, therefore, that the title under consideration does not disclose the existence, prior to the right of way acquisition of defendant, of a servitude of passage on the Battistella Canal in favor of plaintiff or its ancestors in title — a conclusion that seems to be fortified by two factors, not heretofore commented on, that are worthy of note. Thus, C. B Foster Packing Company,. Inc., in the “Act of Agreement and Boundary Settlement” of May 19, 1930 to which Arthur Battistella *175 and Peoples Utilities, Inc. were also parties was expressly granted a canal servitude; whereas, the latter (plaintiff’s immediate ancestor in title) was not so favored. Again, the “Act of Correction, Ratification and Confirmation!’ dated August 1, 1952 (executed after this suit was filed) discloses the entertainment by plaintiff of considerable doubt (the stated purpose thereof was “to clear up all doubt”) that it held the servitude. Certainly, the instrument would not have been executed had plaintiff’s title clearly evidenced the claimed right. In this connection it is well to point out that our jurisprudence is to this effect: “Servitudes are restraints on the free disposal and use of property, and are not, on that account, entitled tq be viewed with favor by the law. In consequence of this servitudes claimed under titles, are never sustained by implication — the title creating them must be express, as to their nature and extent, as well as to the estate which owes them, and the estate to which they are due.” Parish v. Municipality No. 2, 8 La. Ann. 145 (cited with approval in Gottschalk v. De Santos, 12 La.Ann. 473, 475 and Declouet v. Borel, 15 La.Ann. 606).
Plaintiff finally complains, apparently as an alternative propostion, that its property has been deprived of the right of drain — a continuous and apparent servitude —that had been acquired by the prescription of ten years. Its counsel assert: “By constructing the solid fill across the canal, appellant has destroyed the natural drainage from appellee’s property into the Battistella Canal to the open waters in the rear.” We doubt seriously that the natural drainage has been destroyed, for the road embankment across the canal contains a twenty-four inch culvert. Moreover, plaintiff’s complaint is that the drainage became insufficient to take off the large quantities of water which it brought from the nearby Mississippi River (by means of a suction pump) and used in the operation of the ice plant — an extraordinary use requiring the act of men and hence discontinuous in nature. However, assuming that there was some natural drainage interference the evidence is not sufficient for making a damage award therefor. In fact, according to plaintiff’s own witnesses the asserted total loss of the business and the claimed depreciation in value of the land resulted because boats could no longer come to the plant and practically one hundred per cent of the ice sold had been to boat traffic.
For the reasons assigned the judgment appealed from is reversed and set aside and the suit is dismissed at plaintiff’s costs.