SEXTON, Judge.
In this suit on several promissory notes and accompanying continuing guaranties, the defendants appeal a default judgment in favor of the plaintiff. Therein the trial court held: service of process was sufficient; defendant sureties had no right to collaterally attack a default judgment rendered against the corporate principal where it was found that the sureties had bound themselves in solido; that plaintiff had sufficiently proved its claim as to amounts owed by defendants; and that the judgment against defendants is in proper form since it does, on its face, specify an ascertainable amount. We affirm the judgment of the trial court.
Billy Murphy, Jack L. Campbell, and Charles Byrom formed Murcambyr, Inc., for the purpose of operating a restaurant in Shreveport, Louisiana. In order to establish the business and begin operation, defendant corporation borrowed approximately $350,000 from plaintiff, Louisiana Bank and Trust Company. Defendants Murphy, Campbell, and Byrom executed continuing guaranties in favor of plaintiff in the amount of $350,000 to secure the loan. On April 29,1980, defendant, Dominic Cordaro, purchased the interests of Murphy and By-rom, and executed a Continuing Guaranty to the plaintiff in the amount of $310,000.
Defendants were unable to fulfill their obligation to repay the loan and in August, 1981, plaintiff filed suit against defendant corporation, the continuing guarantors, and the original signatories of the notes. Defendant corporation was served on August 12, 1981, by personal service on John Ham-mons. It appears from the record that pri- or to August 20, 1980, John Hammons was listed as agent for service of process for the defendant corporation. Upon being served in an unrelated matter in August, 1980, Hammons resigned as agent with the Secretary of State, leaving Dominic Cordaro as the agent for service of process for the defendant corporation. In resigning, Ham-mons did not fully comply with LSA-R.S. 12:104 C which provides in part that:
“A registered agent may resign but such resignation shall be effective only when written notice thereof has been given to the corporation, the Secretary of State, and the recorder of mortgages of the parish in which the registered office is located.” (Emphasis added).
Hammons gave proper notice to the Secretary of State but failed to give written notice to the Recorder of Mortgages in Cad-do Parish where his office was located. Thus, in August of 1981, when seeking to find the registered agent for service of process plaintiff found Hammons’ name still enrolled with the Recorder of Mortgages as agent for the defendant corporation. Mr. Cordaro, who also was listed as agent for service of process, was served by domiciliary service in his individual capacity as surety.
On September 3, 1981, a default judgment was confirmed against the defendant corporation. The suit was then pursued against the signers of the notes and Continuing Guaranties in their individual capaci *108 ties. Judgment in favor of the plaintiff was signed and filed December 2, 1981.
The first issue raised on appeal is the sufficiency of service of process, both upon Hammons and upon Cordaro. The resolution of this issue is determinative of the validity of the default judgment against defendant corporation.
We first note that domiciliary service cannot be made upon a corporation. Rue v. Messmer, 332 So.2d 591 (La. App. 4th Cir. 1976). Further, domiciliary service upon the corporation’s registered agent is insufficient. Gamble v. Carter, 378 So.2d 185 (La. App. 1st Cir. 1979). However, we find that service upon John Hammons was valid and sufficient due to the failure to comply with the very specific and mandatory provisions of LSA-R.S. 12:104 C. Clearly, the purpose of notifying the Recorder of Mortgages of the change or resignation of a corporation’s agent for service of process is to allow creditors and others interested in filing suit against a corporation to obtain expeditious and accurate information necessary for service.
Louisianá has traditionally given great deference to faith placed in the public records. See McDuffie v. Walker, 125 La. 152, 51 So. 100 (1910); Buras Ice Factory, Inc. v. Department of Highways, 235 La. 158, 103 So.2d 74 (1957); and Prevot v. Courtney, 129 So.2d 1 (1961). At the time Hammons was served he was still the registered agent of the defendant corporation due to his failure to comply with the provisions of LSA-R.S. 12:104 C by not notifying the Recorder of Mortgages. Therefore service of process on this registered agent is valid, even though the Secretary of State had been notified of his resignation. Thus, the judgment against the defendant corporation is valid.
Having found a valid judgment has been entered against the defendant corporation we pretermit the issue of whether the individual defendants’ relationship to the defendant corporation is one of solidarity, as the existence of the valid judgment moots the individual defendants’ argument that they are not solidarily liable and that therefore a valid judgment against the principal debtor is necessary to effect their liability.
The defendants next assert that plaintiff failed to prove that the defendant corporation owed a debt of $4,850.61 to Kilpatrick Life Insurance Company, which plaintiff claims it paid on behalf of the defendant corporation.
The plaintiff presented evidence to support its contention that the defendant corporation was delinquent in making loan and interest payments to Kilpatrick Life Insurance Company which held a first mortgage on the restaurant property. Plaintiff, who held the second mortgage, paid $4,061 in order to keep the first mortgage current, and thus protect its own interests. With regard to the payments made by plaintiff to Kilpatrick, the following testimony was given by Mr. Ray Oden, Chairman of the Board of Louisiana Bank and Trust, the plaintiff bank:
Q. Mr. Oden, I believe Louisiana Bank and Trust had a second mortgage on the property in question; is that correct?
A. Yes, sir we do.
Q. Who has the first mortgage on the property?
A. Kilpatrick Life Insurance Company.
Q. Did you authorize on July 3 of this year a payment of $4,040 on Kilpa-trick Life Insurance Company to bring the first mortgage current?
A. Yes, sir.
Plaintiff further introduced a certified copy of its second mortgage which contained a provision [Clause B(3)] allowing for payment by the second mortgagee to the first mortgagee of the note if the first mortgage was in arrears. Plaintiff also introduced evidence including ledger sheets which corroborated its payment of the ar-rearages. That Kilpatrick was the first mortgagee or that the debt was owed by the defendant corporation was never disputed. Instead defendant argues that plaintiff failed to bear its burden of proving the existence of the debt because he did not *109 produce the note upon which the debt was owed. Considering the evidence presented, this court, as did the trial court, finds that plaintiff made a prima facie showing that it had paid a portion of the defendant corporation’s indebtedness as it was privileged to do under Clause B(3) of the collateral mortgage between plaintiff and defendant. Therefore plaintiff is entitled to judgment in the amount of $4,850.61, which is the amount of defendants’ indebtedness paid by plaintiff plus interest. Actual production of the note that forms the basis for defendants’ indebtedness to Kilpatrick was not necessary.
Defendants’ final contention is that the judgment signed by the trial court was improper in that it is so vague that the exact amount owed cannot be determined by the wording of the judgment. Alternatively they contend that the judgment only provides for judicial interest from the date of judicial demand. This contention is obviously made only with respect to the judgment for the sum of $97,457.98, as the interest on the other sum in the judgment is specific. However, with respect to the larger amount, the judgment is for the $97,-457.68 “plus interest and attorneys fees ... which is presently due and owing thereon, from the date of Judicial Demand until paid ...” This is the same language which plaintiff used in the prayer to the original petition.
Arguably, considering the changes effected to LSA-C.C. Art. 2924 in the judicial rate of interest by Act 574 of 1981,[1] one cannot determine whether the interest is legal or conventional and whether it is from the date payments were past due or from the date of judicial demand. Also, of course, the amount of attorneys fees is not specifically set out in the judgment.
The two notes sued on each called for 25% attorneys fees on the unpaid balance and 10% per annum on that balance as interest from date until paid. In computing the amount due, the representative of Louisiana Bank testified that their records showed a principal balance of $94,428.12 due, and the additional sum represented interest from the last payment until the date of the suit, the total of which was $97,457.98. It thus may appear that the judgment is for the $97,457.98 plus 10% interest thereon from judicial demand until paid together with 25% attorneys fees on the amount to be collected. However, interest may not be collected on interest. LSA-C.C. Art. 1939.
In order to preclude any arguable problems we will recast that part of the judgment complained of to be certain that there is no ambiguity. We therefore affirm the judgment of the trial court but amend and recast only that portion of the judgment with respect to the sum of $97,457.98 to render judgment as follows:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, Louisiana Bank and Trust Company, and against the defendant, Mureambyr, Inc., in the sum of Ninety-Seven Thousand Four Hundred Fifty-Seven and 98/100 dollars, ($97,457.98), plus 10% interest on Ninety-Four Thousand Four Hundred Twenty-Eight and 12/100 dollars, ($94,-428.12), from the date of judicial demand together with 25% attorneys fees on the amount to be collected and for all costs of these proceedings.
As amended and recast the judgment is affirmed.

. This act created the unusual situation of making legal interest in this case higher than conventional interest. Under such a circumstance it is well settled that the conventional rate prevails. Meyer v. Consolidated Marketing, Inc., 376 So.2d 1278 (La. App. 2d Cir. 1979).