641 So.2d 1068 (1994)
Charles L. WILLIAMS, et al.
v.
Bart R. WIGGINS, et al.
No. 26060-CA.
Court of Appeal of Louisiana, Second Circuit.
August 17, 1994.
*1070 Professional Law Corp. by Paul V. Myers-Ringgold, for appellant.
Goff, Caskey, Davis & Fallin by H. Russell Davis, Arcadia, for appellee.
Before NORRIS and WILLIAMS, JJ., and WESTERFIELD, J. Pro Tem.
WESTERFIELD, Judge Pro Tem.
Landowners appeal a trial court decision finding no predial servitude existed in their favor across their neighbors' land and therefore denying them a permanent injunction and monetary damages. Neighbors appeal the trial court's assessment of all costs to them, such assessment being predicated upon neighbors filing a peremptory exception of no cause of action on the date of trial which the trial court later found meritless. We amend the assessment of costs, and as amended we affirm.

FACTS
Mr. and Mrs. Stevie Beckham leased portions of their tract of land on Lake Bistineau to others who built fishing camps on the property. After Stevie Beckham died, his son Billy had the property surveyed in July of 1981, intending to subdivide the property and sell the parcels to the lessees. The manner of subdivision gave every parcel access to at least one of two nearby Bienville Parish roads.
Plaintiffs-appellants Charles and Eloise Williams, Larry and Givonna Todd, and Floy Shamburger as well as defendants-appellees Bart and Emogene Wiggins purchased tracts of the land subdivided by Billy Beckham. Plaintiffs-appellants Kermit and Myrna Westmoreland's tract is adjacent to the Beckham lots, but Beckham is not their predecessor in interest. The owners of Lot 12 (Williams), Lot 13 (now Todd), and Lot 14 (Shamburger), as well as the owners of the Westmoreland property, traveled a drive across Lot 10 (owned by Wiggins) to reach their respective properties from before the date of purchase until the Wigginses erected a fence across the drive in January of 1992. Plaintiffs-appellants brought suit in the district court, claiming a predial servitude existed in their favor across the Wigginses' Lot 10. They sought to enjoin the Wigginses permanently from denying them access to the road.
Mr. Wiggins first leased property from his brother-in-law and sister, Mr. and Mrs. Stevie Beckham, in the 1950's. Both parish roads as well as the drive were in existence, but were merely "pig trails." In a two week span in 1981, Billy Beckham sold Lots 10, 12, 13, and 14 to the parties in this action or their predecessors. Mr. Wiggins continued to allow the owners of the lots to the east to use the drive across his land for access. In 1984 or 1985, Mr. Wiggins informed the plaintiff-appellants they could continue to cross his land, but would have to cross in another place. At this time the drive was moved to a steeper area near the property line between Lots 10 and 12. Below is a composite of the maps in the record:
*1071 
When plaintiffs-appellants complained about the condition of the drive, the Wigginses told them they were not responsible for maintaining the drive and that whatever was done, plaintiffs-appellants would have to do. Plaintiffs-appellants put shingle tabs on the drive, and later blacktopped part of it one weekend when the Wigginses were gone. In January, 1992, Mr. Wiggins erected a fence across the drive, having given notice of his intent to do so a month earlier.
The drive across the Wigginses' property is not the only access to the plaintiffs-appellants' lots. Each is accessible by a parish road; however, that road is on a bluff. Plaintiffs-appellants' houses are constructed on a lower level near the lake, making the drive a more convenient method of reaching their property.
The trial court held no predial servitude existed, and therefore refused to grant an injunction. However, all costs were assessed to the Wigginses for delaying the trial on the merits by filing a peremptory exception of no cause of action on the date of trial, which the trial court later found to be without merit.

ASSIGNMENTS OF ERROR
Plaintiffs-appellants raise two assignments of error on appeal. First they argue the trial court erred in failing to find a servitude by title was created in the deed of Lot 10 from *1072 Billy Beckham to the Wigginses. Next they assign as error the trial court's failure to grant any relief.
The deed conveying Lots 9 and 10 to the Wigginses contained this language:
Vendees agree that they will not deny free access to adjoining lots and that the drainage ditch will not be altered so as to divert water across neighbors.
Billy Beckham, who drafted all the deeds himself, testified he intended this language to refer to the drive across Lot 10 to Lots 12, 13, and 14, and did not intend to refer to the parish road. Additionally, plaintiffs-appellants argue that the drive across Lot 10 has been used since the 1950's for access to the rear lots, implying an apparent servitude was created by acquisitive prescription or by destination of the owner. The trial court in its reasons for judgment specifically held no servitude by title was created, nor was an apparent servitude by acquisitive prescription created.
The Wigginses testified they believed the language of the restriction referred to the parish roads because the property lines extend to the center of the parish roads and the price of the property was determined by footage. They further assert no servitude by acquisitive prescription was created because the use of the drive was at their pleasure, meant to be used only until each of the owners could build driveways from the parish road to their property.
The Wigginses assign as error the trial court's assessment of all costs to them. They claim the implication of this action is that the Wigginses are to be punished for filing the peremptory exception of no cause of action. They concede no fault for this filing; but even assuming they were somehow at fault, they claim at most they should only have been assessed such costs as the delay caused.

CREATION OF A PREDIAL SERVITUDE
Plaintiffs-appellants assert they are the owners of a predial servitude across the Wigginses' property. A predial servitude is a charge on a servient estate for the benefit of a dominant estate. The two estates must belong to different owners. La.C.C. Art. 646. Servitudes are restraints on the free disposal and use of property, and are therefore disfavored in the eyes of the law. Hence, doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate. La.C.C. Art. 730; Buras Ice Factory, Inc. v. Dept. of Highways, 235 La. 158, 103 So.2d 74 (1958).
An apparent servitude may be acquired in one of three ways: by title, by destination of the owner, or by acquisitive prescription. La.C.C. Art. 740. The trial court found no predial servitude was created by title or by acquisitive prescription.

Title
A predial servitude may be created by title where the grantor sufficiently expresses an intent to create such servitude. Here the deed from Billy Beckham to the Wigginses stated, "Vendees agree they will not deny free access to adjoining lots." We note that the term adjoining means "adjacent to"; therefore, if a servitude were created by title, it is only in favor of the Williamses. If the grantor meant to include the lots farther east now belonging to the Todds, Mrs. Shamburger, and the Westmorelands, he should have used language indicating such.
Servitudes claimed under title are never sustained by implication; the title creating them must be express as to their nature and extent, as well as to the estate that owes them and the estate to which they are due. Buras, supra. Here, the parties to the first deed are not in agreement about the meaning to be given the cited language.
The trial court found, and we agree, that this ambiguity raises a doubt as to whether a servitude existed. This doubt triggered the rule of Article 730, requiring such doubt to be resolved in favor of the servient estate. The trial court correctly found no servitude was created by deed. Thus plaintiffs-appellants have no predial servitude by title.

Acquisitive Prescription
A predial servitude may be acquired by acquisitive prescription. The one who claims it must have used it for 10 years in good faith *1073 and with just title, or for 30 years where either good faith or just title is not present. La.C.C. Art. 742. Here the 30 year period does not apply because, as the trial court found, not enough time has passed. However, the plaintiffs have used the drive as owners and not as lessees for 10 years.
For purposes of acquisitive prescription, a possessor is in good faith when he reasonably believes, in light of objective considerations, that he is the owner of the right or thing which he possesses. La.C.C. Art. 3480. Good faith is always presumed, and the presumption cannot be defeated by either error of fact or error of law. The presumption is rebutted by proof that a reasonable person in the possessor's position should know he is not the owner. La.C.C. Art. 3481. It is clear from the testimony of the plaintiffs, as well as that of the defendants, the good faith requirement was met, and the Wigginses have put on no evidence to the contrary.
A just title is a juridical act, such as a sale, exchange, or donation, sufficient to transfer ownership or another real right. The act must be written, valid in form, and filed for registry in the conveyance records of the parish in which the immovable is situated. La.C.C. Art. 3483. In the case before us, the plaintiffs-appellants all have deeds which contain language concerning free access to adjoining property. However, that language is insufficient to meet the just title requirement.
Billy Beckham had no access rights to convey, because the ambiguous language in the Wigginses' deed failed to reserve anything to the grantor. However, just title need not be derived from the true owner. It is enough that a deed contains language sufficient to convey access rights had the grantor possessed such rights. Where the language is insufficient to convey ownership of property which belongs to the grantor, it cannot be sufficient to create just title in property which does not in fact belong to the grantor.
The applicable language for the deeds in question is:
Lot 12: Williams Vendors [sic] agree that they will not deny free access to adjoining lots;

Lot 13: HinesVendors [sic] agree that... [they will not] deny free access to adjoining camps (also contained in Hines-Todd deed); and
Lot 14: ShamburgerVendee will not deny free access to adjoining lots.

This language would have been ineffectual to transfer a right of access because it is ambiguous and imprecise. Hence the language in question could not function to create just title to a right of access across Lot 10. The plaintiffs-appellants have no predial servitude created by acquisitive prescription.

Destination of Owner
A predial servitude may be acquired by destination of the owner. Destination of the owner is a relationship established between two estates having the same owner which would be a predial servitude if the estates belonged to different owners. When the two estates cease to belong to the same owner, unless there is an express provision to the contrary, an apparent servitude comes into existence of right. La.C.C. Art. 741.
Here, the lessees used the drive across the Wigginses' property to reach their camps for roughly 20 years when Stevie Beckham owned all the tracts of land. When they purchased the land from Billy Beckham, the unity of title was severed. However, in order to create a servitude by destination of the owner, it must be the owner, and not a lessee, who creates the situation from which the servitude results. See La.C.C. Art. 741 and Official Revision Comments; Bertrand v. Halley, 460 So.2d 705 (La.App. 3d Cir.1984); see also Yiannopoulos, 4 Louisiana Civil Law Treatise 402, Predial Servitudes § 146 at 408 (1983).
Appellants have no predial servitude by title, by acquisitive prescription, or by destination of the owner. The trial court did not err in finding there was no servitude. There being no predial servitude, the trial court acted properly in granting no relief.

*1074 COSTS
In their answer to this appeal, the Wigginses assign as error the trial court's assessment of all costs to them. Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause. Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable. La. C.C.P. Art. 1920.
Although the general rule is that the losing party pays all costs, a prevailing party may be taxed with costs if that party in some way incurred additional costs pointlessly or engaged in other conduct which would equitably justify the prevailing party being assessed. Sanders v. Robinson, 614 So.2d 740 (La.App. 2d Cir.1993); Johnson v. Hendrix Mfg. Co., Inc., 475 So.2d 103 (La.App. 2d Cir.1985).
The assessment of costs lies within the trial court's discretion and will not be disturbed unless that discretion is abused. Sanders, supra.
In its reasons for judgment, the only statements made to support the trial court's assessment of costs rest on the Wigginses' choice of when to file their exception together with the fact that exception was ultimately found to be without merit. Under the law, the Wigginses were entitled to file their peremptory exception at any stage of the proceeding in the trial court prior to a submission of the case for a decision. La.C.C.P. Arts. 927 and 928.
There is nothing in the record to indicate this exception was brought without a good faith belief it was supported by the law. Assessing all costs to the Wigginses functioned to penalize them for exercising their right to bring the exception on the day of trial, hence the trial court abused its discretion by making that assessment based on their timing. However, since the losing party generally bears costs and as far as the exception is concerned, the Wigginses are the losing party, the assessment of costs is modified such that the plaintiffs-appellants will pay 75% and the Wigginses will pay 25%. Costs of the appeal are assessed to plaintiffs-appellants.
Accordingly, as modified, we affirm.
AFFIRM.