664 So.2d 88 (1995)
F.E. PALOMEQUE
v.
Paul R. PRUDHOMME.
No. 95-C-0725.
Supreme Court of Louisiana.
November 27, 1995.
*89 Victor Jose Gonzalez, Metairie, for Applicant.
William Howard Reinhardt, Jr., Reinhardt & McGoey, Metairie, for Respondent.
MARCUS, Justice.[*]
On January 12, 1994, Dr. F.E. Palomeque filed a petition for injunctive relief to prohibit Paul E. Prudhomme from bricking over windows in the common wall between Dr. Palomeque's condominium at 422 Chartres Street *90 and Prudhomme's property at 420 Chartres. Dr. Palomeque alleges that his condominium has acquired servitudes of light and view[1] over Prudhomme's estate.
The properties at 420 and 422 Chartres Street were originally constructed in 1834 for Phillippe Auguste Delachaise as two buildings in a row of three, four-story brick buildings. There is no evidence as to how or when the buildings were reduced to their current state, but today the Prudhomme property at 420 Chartres is but one story high while the condominium building at 422 Chartres is two stories high.[2] On August 21, 1974, the Maison-Chartres Condominium Association acquired 422 Chartres and converted the building to condominiums with two units on the second floor. Architectural drawings by Leonard Reese Spangenberg, Jr., dated April 20, 1972 and created in anticipation of the condominium project, show ten windows in the common wall. At the time of trial there were only six functional windows. Two additional windows were apparent from the exterior but were sheetrocked over on the interior. Based on these discrepancies, the trial judge found that the windows were not preexisting but rather were placed in the common wall as part of the conversion project in 1974.[3]
In 1981 Paul Prudhomme purchased the one-story building at 420 Chartres, which now provides K-Paul's Restaurant with office space, a test kitchen and a garage facility. Prudhomme first applied to the Vieux Carre Commission ("Commission") for approval of a second story addition in 1985. This project requires the bricking up of the windows at 422 Chartres. The Commission granted a six month permit but no work was done until 1991, when, with Commission approval, Prudhomme began the process of strengthening the failing facade. The second floor facade was added at that time.
In July 1993, Prudhomme's architect met with Andrew McCollam and Dr. Palomeque, owners of the second floor units, regarding Prudhomme's plan to close the windows. No agreement was reached, and Prudhomme went forward with his efforts to obtain another permit. In the meantime, on September 20, 1993, Andrew McCollam sold the front unit to Dr. Palomeque, who continued to oppose Prudhomme's efforts to enclose the second floor of 420 Chartres. A few days later the Commission approved the permit. Dr. Palomeque's action for injunctive relief followed.
A temporary restraining order was granted, and after a hearing, a preliminary injunction was granted. However, after a trial on the merits, the trial judge denied the permanent injunction and held that servitudes of light and view cannot be acquired by acquisitive prescription. Dr. Palomeque appealed.[4] The court of appeal affirmed, finding that, even if acquisitive prescription were applicable, Dr. Palomeque did not have the requisite *91 ten years of good faith.[5] On application by Dr. Palomeque, we granted certiorari to review the correctness of that decision.[6]
The issues presented for our consideration are: (1) whether servitudes of light and view can be acquired by acquisitive prescription; and (2) if so, whether servitudes were acquired in this case.
Apparent servitudes may be acquired by title, by destination of the owner, or by acquisitive prescription. La.Civ.Code. art. 740. Nonapparent servitudes may be acquired by title only. La.Civ.Code art. 739. Therefore, we must determine whether the servitudes of light and view are apparent or nonapparent servitudes.
Civil Code Article 707 defines apparent servitudes as those "that are perceivable by exterior signs, works, or constructions; such as a roadway, a window in a common wall, or an aqueduct." emphasis added). Nonapparent servitudes are those "that have no exterior sign of their existence; such as the prohibition of building on an estate or of building above a particular height."
A window in a common wall is clearly an exterior sign of a servitude because a co-owner of a common wall may not make any openings in the wall without the consent of his neighbor. La.Civ.Code art. 681; A.N. YIANNOPOULOS, PREDIAL SERVITUDES § 135, at 390-91 (4 LOUISIANA CIVIL LAW TREATISE 1983) [hereinafter YIANNOPOULOS, PREDIAL SERVITUDES]. Thus, by definition, a servitude of light or view in a common wall is apparent and can be acquired by acquisitive prescription.[7] YIANNOPOULOS, PREDIAL SERVITUDES § 135, at 390-93. Nonetheless, Prudhomme argues that, even in a common wall, the servitudes of light and view cannot be apparent because they are equivalent to a prohibition against building, a nonapparent servitude. This argument is without merit. The servitudes cannot be equated. A servitude of prohibition of building is much more onerous in that it prevents the owner of the servient estate from building any constructions on his estate. With servitudes of light and view the owner of the servient estate may still build on his property; he is only prevented from raising constructions that would obstruct the light or view. This prohibition against obstructions is merely an accessory right to the servitudes of light and view. La.Civ.Code arts. 701, 703; see also, A.N. Yiannopoulos, Creation of Servitudes by Prescription and Destination of the Owner, 43 LA.L.REV. 57, 61-65 (1982).
Thus, we hold that the servitudes of light and view in a common wall are apparent servitudes which encompass the right to prevent the servient estate from building obstructions to the light and view. As apparent servitudes, the servitudes of light and view may be established by acquisitive prescription. La.Civ.Code art. 740.
*92 This brings us to the second question presented: Did Dr. Palomeque acquire servitudes of light and view by acquisitive prescription of ten years.
Prior to the 1977 revision of the law on predial servitudes, controversy existed as to the requisites for ten year prescription. Articles 765 and 3504 of the Civil Code of 1870, the articles in effect at the time, provided:
Article 765: "Continuous and apparent servitudes may be acquired by title, or by a possession of ten years ..."
Article 3504: "A continuous apparent servitude is acquired by possession and the enjoyment of the right for thirty years uninterruptedly, even without a title or good faith."
The interrelation of these code articles is an unresolved matter. See, Comment, Acquisitive Prescription of Servitudes, 15 LA.L.REV. 777 (1955). The earliest decisions required that the possessor have just title and be in good faith in order to acquire a servitude by ten years possession. Kennedy v. Succession of McCollam, 34 La.Ann. 568 (1882). However, subsequent decisions required only ten years and good faith. Blanda v. Rivers, 210 So.2d 161 (La.App. 4th Cir.1968). Still others effectively wrote Article 3504 out of the Code by requiring no more than ten years of possession, regardless of good faith or just title. Levet v. Lapeyrollerie, 39 La. Ann. 210, 1 So. 672, (1887).
In 1977, these code articles were replaced by Article 742 which reads as follows:
The laws governing acquisitive prescription of immovable property apply to apparent servitudes. An apparent servitude may be acquired by peaceable and uninterrupted possession of the right for ten years in good faith and by just title; it may also be acquired by uninterrupted possession for thirty years without title or good faith. (emphasis added).
According to the Revision Comments, this article was based on a combined reading of Articles 765 and 3504 and was intended to overrule all contrary jurisprudence. In 1982, the code article on just title was also amended. That article now requires that just title be written, valid in form and recorded in the conveyance records of the parish in which the immovable is situated. La.Civ.Code art. 3483.
Dr. Palomeque argues that these revisions to the law of predial servitudes are not applicable here and that under the pre-1977 law, he is not required to establish just title. Blanda v. Rivers, 210 So.2d 161 (La.App. 4th Cir.1968). This argument is without merit.[8] Section 7 of Act No. 514 which enacted the 1977 revisions provides:
The provisions of this Act shall apply to all predial servitudes, including those existing on the effective date of this Act; but no provision may be applied to divest already vested rights or to impair the obligation of contracts.
In order for a right to be vested it must be absolute, complete, unconditional, and independent of a contingency; the mere expectation of a future benefit or contingent interest in property does not create a vested right. Tennant v. Russell, 214 La. 1046, 39 So.2d 726, 728 (1949); Voelkel v. Harrison, 572 So.2d 724, 726 (La.App. 4th Cir.1990), writ denied, 575 So.2d 391 (La.1991); Matter of American Waste & Pollution Control, 597 So.2d 1125, 1130 (La.App. 1st 1992), writ denied, 604 So.2d 1309, 1318 (La.1992). On January 1, 1978, the effective date of Act No. 514, Dr. Palomeque's predecessors had been possessing these servitudes for approximately four years. The right to the servitudes was contingent on continued possession without interruption for six more years. Consequently, Dr. Palomeque had no vested right in these servitudes which would prevent the *93 application of the 1977, or even the 1982, revisions.[9]
Predial servitudes are in derogation of public policy because they form restraints on the free disposal and use of property. Therefore, servitudes are not entitled to be viewed with favor by the law and can never be sustained by implication. Buras Ice Factory Inc. v. Dept. of Hwys. of La., 235 La. 158, 103 So.2d 74, 80 (1958); Gravolet v. Bd. of Commissioners, 598 So.2d 1231, 1234 (La. App. 4th Cir.1992); see also, 1 DOMAT, THE CIVIL LAW IN ITS NATURAL ORDER, tit. XII, sec. 1, at 435 (Strahan, trans., Cushing ed., 2d ed. 1861). Any doubt as to the existence, extent or manner of exercise of a predial servitude must be resolved in favor of the servient estate. La.Civ.Code art. 730; McGuffy v. Weil, 240 La. 758, 125 So.2d 154, 158 (1960).
Applying the revised law on acquisitive prescription of servitudes, Dr. Palomeque must establish that he has possessed the right for ten years in good faith and with just title. La.Civ.Code art. 742. The trial judge found that the windows were created in 1974. Based on the record, this finding is not clearly wrong. Thus, the ten years of adverse[10] possession have been conclusively established. However, the requirement of just title is more problematic for Dr. Palomeque.
Just title is a juridical act sufficient to transfer ownership or another real right. It must be written, valid in form and filed for registry in the conveyance records of the parish in which the immovable is situated. La.Civ.Code art. 3483. As applied to servitudes, Article 3483 requires that the possessor have a title that would have established a servitude if it had been granted by the owner of the servient estate.[11] YIANNOPOULOS, PREDIAL SERVITUDES § 137, at 396. Because Dr. Palomeque has no agreement with the servient estate, he argues that his titles to the two condominium units serve as just title for these servitudes. In setting forth the description of the properties to be conveyed in the acts of sale, the descriptions commence with the following standard language:
THAT CERTAIN PIECE OR PORTION OF GROUND, CONDOMINIUM PARCELS, UNITS AND/OR APARTMENTS, COMMON ELEMENTS AND LIMITED COMMON ELEMENTS, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes and appurtenances thereunto belonging or in anywise appertaining, situated on....
This boilerplate language[12] has been used in every deed transferring these condominiums since their development in 1974.
Clearly, the language in question would be too ambiguous and imprecise to establish servitudes of light and view by title. Even if this language were used in an agreement with the servient estate, it could not establish servitudes of light and view. For a servitude to be created by title, the instrument must be express as to the nature and extent of the servitude. Because servitudes *94 are so disfavored, an ambiguous agreement to establish a servitude is unenforceable. "Where the language is insufficient to convey ownership of property which belongs to the grantor, it cannot be sufficient to create just title in property which does not in fact belong to the grantor." Williams v. Wiggins, 26,060 (La.App. 2d Cir. 9/17/94), 641 So.2d 1068, 1073.
Nonetheless, Dr. Palomeque argues that this language is sufficient to constitute just title for purposes of acquisitive prescription. We disagree. Even assuming this language could transfer a preexisting right, under no circumstance would this ambiguous language create a servitude. Therefore, it cannot suffice for just title. Williams, 641 So.2d at 1073; Eubanks v. State, Dept. of Trans. and Dev., 620 So.2d 954, 959 (La.App. 3d Cir.1993), writ denied, 629 So.2d 351, 353 (La.1993).
Moreover, "just title in acquisitive prescription is not required only as an element of showing good faith. It represents a separate condition. Hence it must exist in reality; the possessor's belief in its existence is insufficient, no matter how plausible." 2 AUBRY & RAU, DROIT CIVIL FRANCAIS §218, no. 311, at 363 (La.St.L.Inst. trans., 7th ed. 1961). Dr. Palomeque may not rely on his belief, no matter how justifiable, that the condominium association had a right to install windows in a common wall. He must show more than that; he must show a written, recorded act that would have created a servitude had it been granted by the owner of the servient estate. If this language were considered sufficient for the purposes of just title, the just title requirement would be rendered meaningless, resulting in the requirement of only good faith and ten years. In 1977, the Louisiana legislature took very specific steps to overrule Blanda and its progeny. To hold otherwise would be to undermine those revisions.[13] Lacking the requisite just title, the only way Dr. Palomeque could acquire servitudes of light and view is by accrual of thirty years of uninterrupted possession which he admittedly does not have.
Accordingly, we hold that the language in Dr. Palomeque's deeds is insufficient to constitute just title to a servitude under Civil Code article 3483. Having found that Dr. Palomeque lacks just title, we need not reach the issue of good faith.[14]

DECREE
For the reasons assigned, the judgment of the court of appeal is affirmed. All costs are assessed against Dr. F.E. Palomeque.
LEMMON, J., concurs and will assign reasons.
NOTES
[*] Judge Lemmie O. Hightower, Court of Appeal, Second Circuit, sitting by assignment in the vacancy created by the resignation of Dennis, J., not on panel. Rule IV, Part 2, § 3.
[1] Art. 701 Servitude of view

The servitude of view is the right by which the owner of the dominant estate enjoys a view; this includes the right to prevent the raising of constructions on the servient estate that would obstruct the view.
Art. 703 Servitude of light
The servitude of light is the right by which the owner of the dominant estate is entitled to make openings in a common wall for the admission of light; this includes the right to prevent the neighbor from making an obstruction.
[2] On August 5, 1850, a fire destroyed the four story building at 420 Chartres, "save the bare walls." However, according to an 1876 map, the building was restored to four stories. On May 17, 1887, another fire broke out which destroyed the three upper stories of 422 Chartres with resultant damage to the second floor of 420 Chartres. Apparently the buildings were rebuilt by 1896. A photograph from the Historic New Orleans Collection shows that as late as 1915, 420 Chartres was still four stories high while 422 was three stories. Thus the upper floors of the buildings were destroyed some time between 1915 and 1964.
[3] Permits were granted by the Vieux Carre Commission in 1972 to allow "structural repairs and alterations to brick masonry." Those permits also authorized the developer to "install new openings and reopen those previously closed." There is no evidence in the record as to when this construction actually took place.
[4] Dr. Palomeque originally was granted a suspensive appeal. Subsequently, he withdrew the suspensive appeal and was granted the right to file a devolutive appeal.
[5] Counsel for Dr. Palomeque conceded during oral argument before the court of appeal that the evidence would not sustain a plea of thirty years acquisitive prescription. Thus the court considered only ten year prescription. The court found that the creation of an opening in the common wall without permission of the co-owner is intrinsically an act of bad faith, and in the alternative, if Dr. Palomeque's predecessors had built the windows with permission, the possession would have been precarious and would not give rise to a claim of acquisitive prescription. Consequently, Dr. Palomeque's claim failed and the court was able to pretermit the questions of whether Dr. Palomeque had just title and whether servitudes of light and view can be acquired by acquisitive prescription. 94-0847 c/w 94-1942 (La.App. 4th Cir. 2/23/95), 650 So.2d 1264.
[6] 95-0725 (La. 5/5/95), 653 So.2d 1181.
[7] The trial judge's reliance on Oldstein v. Firemen's Bldg. Ass'n, 44 La.Ann. 492, 10 So. 928 (1892), was misplaced. Oldstein is inapposite because it involved a private wall. In Oldstein, the neighbor had an imprescriptible right to make the private wall common by paying half the value of its construction, but until he exercised that right, the wall was private and he had no right to demand the windows be closed.

Openings in a private wall are not exterior signs of a servitude because they are merely the exercise of a prerogative of ownership. The act of placing a window in a private wall is in no way adverse to one's neighbor. 1 PLANIOL & RIPERT, TREATISE ON THE CIVIL LAW pt. 2, ch. 4, no. 2958, at 743-44 (La.St.L.Inst. trans., 12th ed. 1939). Consequently servitudes of light and view in a private wall are nonapparent and can be established only by title or formal declaration of destination. See A.N. Yiannopoulos, Creation of Servitudes by Prescription and Destination of the Owner, 43 LA.L.REV. 57, 61-65 (1982).
[8] Because we find that the 1977 and 1982 revisions to the law of acquisitive prescription are applicable here, we need not resolve the controversy created by articles 765 and 3504 of the Code of 1870. However, we note that most commentators believe that Kennedy v. Succession of McCollam, 34 La.Ann. 568 (1882), provided the proper interpretation of those articles by requiring both good faith and just title in addition to ten years of adverse possession. See, e.g, A.N. YIANNOPOULOS, PREDIAL SERVITUDES § 137, at 397 (4 LOUISIANA CIVIL LAW TREATISE 1983); Comment, Acquisitive Prescription of Servitudes, 15 LA.L.REV. 777 (1955).
[9] According to Planiol, a law is retroactive only when it "goes back to the past either to evaluate the conditions of the legality of an act, or to modify or suppress the effects of a right that have already been realized. Apart from this there is no retroactivity, and a law may modify the future effects of facts or acts that have preceded it without being retroactive." 1 PLANIOL ET RIPERT, TRAITé éLéMENTAIRE DE DROIT CIVIL 97 (10th ed. 1925) (emphasis in original). Thus, application of the 1977 and 1982 revisions do not offend traditional civilian notions of retroactivity.
[10] Dr. Palomeque and Paul Prudhomme agree that the previous owners of the servient estate never consented to the placement of these windows.
[11] As stated by Aubry & Rau, just title "is a title which as suchthat means without regard to whether it comes from a true owner and a person competent to alienateis appropriate for the purpose of conferring an ownership interest. In other words, any title the purpose of which is to transfer ownership is a just title, if it is legitimate as to its category and is in the form required to make it valid as such...." Aubry & Rau, Droit Civil Français, in 2 CIVIL LAW TRANSLATIONS § 218, at 359 (1966) (emphasis added).
[12] The legal effect of this language is merely to transfer all rights which existed prior to the sale. With regard to servitudes, this is superfluous because predial servitudes run with the land and would be transferred regardless of the presence of this phrase.
[13] In revising Article 3483 to require just title to be both written and recorded, the legislature has placed an increased emphasis on the concept of notice. That recordation requirement would serve no useful purpose if this ambiguous language were deemed sufficient.
[14] In any event, the record is not fully developed on this issue. Dr. Palomeque acquired the rear unit in May of 1990 from the American Bank of Ruston. No evidence was presented as to the chain of title on that unit. Dr. Palomeque purchased the front unit in 1993 from Andrew McCollam, who purchased it in 1980. While we can presume good faith in regard to the front unit, absent the chain of title to the rear unit, we are unable to determine the number of years that were tainted by the bad faith of the developer who created the windows in 1974.