# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


## 03-290


## JOHN C. MCMULLEN AND MELANIE J. MCMULLEN

## VERSUS

## CITY OF SULPHUR

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 99-3078
HONORABLE ARTHUR J. PLANCHARD, PRESIDING

**********

## SYLVIA R. COOKS
## JUDGE

**********

Court composed of Ned E. Doucet, Chief Judge, Ulysses Gene Thibodeaux, Sylvia R. Cooks, Oswald A. Decuir and Billy H. Ezell, Judges.

Ezell, J., dissents.

### REVERSED AND REMANDED.


**David F. Dwight**
**1400 Ryan Street**
**Lake Charles, LA   70601**
**(337) 439-3138**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
     **John C. McMullen and Melanie J. McMullen**

**Robert A. Robertson**
**Allen & Gooch**
**1015 St. John Street**
**P.O. Drawer 3768**
**Lafayette, LA   70502-3768**
**(337) 237-6881**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **City of Sulphur**


**COOKS, Judge.**

This appeal arises from a dispute over the existence of a servitude over a lot located in the Forest Hills Subdivision in Calcasieu Parish. John C. McMullen and his wife, Melanie, purchased the property in question from John's father, William McMullen, and were interested in building a home on the lot. However, when they attempted to secure financing to build on the land, the lending institution informed the McMullens they would not loan any funds on property built over an easement. A sewer line ran diagonally underneath the lot. The McMullens filed suit against the City of Sulphur asking for damages to their property from the sewer line and requesting the City move the sewer line.

The city filed a motion for summary judgment which was denied, and the matter proceeded to trial. The trial court ruled in favor of the City, finding that the public records clearly evidenced the servitude over the lot and it was incumbent on the person purchasing the property to determine if there were any encumbrances on the property. The plaintiffs claims were dismissed, which precipitated this appeal. For the following reasons, we reverse and remand.[1]

**ANALYSIS**

The McMullens purchased the property at issue from William H. McMullen (John's father) by Cash Deed on March 26, 1995. The legal description of the property at issue is:

Lot 15 of Block "A" of Forest Hills Subdivision Unit 1, a

---

[1] We were informed at oral argument that plaintiffs have sold the property since the trial court's decision. The City has filed an exception of no right of action on appeal attacking plaintiffs' right to proceed with this litigation. La.Code Civ.P. art. 2163 provides that this court can consider an exception of no right of action for the first time on appeal *if* it is "pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record." There is nothing in the record to prove the City's allegation, although plaintiffs acknowledged at oral argument they no longer own the property. On remand, the City will have opportunity to reurge the exception.

Subdivision as per plat Recorded in plat book 10, page 24, records of Calcasieu Parish, Louisiana.

John McMullen did not obtain an abstract on the property following the purchase.

The McMullens have continued to claim "the public records of Calcasieu Parish include no grant of servitude whatsoever nor any other title document to support or otherwise allow the defendant City of Sulphur to maintain this sewer line across the McMullen property." The City disagrees and referenced at trial an abstract which contained a signed right of way by plaintiffs' predecessor in title granting the City of Sulphur the right and privilege to "lay, construct, maintain and operate a sewer line" on the property as follows:

> *Approximately 10 feet east of and along the east bank of the drainage ditch* forming the west boundary and extending across Lot 15, Block "A" of Forest Hills Subdivision. (Emphasis added.)

This right of way, dated August 31, 1963, was filed in the public registry on October 29, 1963.

The trial court, in oral reasons for judgment, cited *Collins v. Slocum*, 284 So.2d 98 (La.App. 3 Cir. 1973), as support for its decision. In *Collins* the former owner of the property in question granted a pipe line right of way, which was timely filed in the public records. The property was sold by the former owner to his son, who then sold the property to a company to subdivide the property into residential lots. The plaintiff in *Collins* purchased one of the subdivided lots and was in the process of building a house on the lot when he was instructed by the pipe line company that he would have to move his structure from the lot. The plaintiff sued, among others, the pipe line company and alleged, in relevant part, it failed to delineate, mark, warn and keep under surveillance the pipe line

servitude. The pipe line company filed an exception of no cause of action urging it did not owe the duties alleged by the plaintiff. The trial court sustained the exception and the plaintiff appealed. This court found the pipe line right of way was properly recorded and "anyone building on the right of way servitude did so at his peril." *Id.* at p. 100. Significantly, it found "[t]he pipe line survitude was not limited to any portion of the property described and therefore, Humble had the right to lay the pipe line at any point it chose." Citing La.Civ.Code art. 779 (La.Civ.Code art. 750), the court noted:

> If the manner in which the servitude is to be used is uncertain, as if the place necessary for the exercise of the right of passage is not designated in the title, the owner of the estate which owes the servitude is bound to fix the place where he wishes it to be exercised.

*Id*. at p. 100.

Only in this instance does the grantor bear the burden of marking or delineating the "place" he desires the servitude to be exercise.

It is undisputed the City was granted a servitude affecting the property. The public record evidences a right was granted to the City to maintain and operate a sewer line on the property located "[a]pproximately 10 feet east of and along the east bank of the drainage ditch forming the west boundary and extending across Lot 15. . ." The "place" of the servitude was designated. The City argues the language "extending across Lot 15" supports the placing of the sewer line diagonally across the lot. We disagree. As depicted on the map reproduced below, the drainage ditch forms the west boundary of the lot and extends (north to south) across Lot 15, Block A of Forest Hills Subdivision.

**SURVEY PLAT**



The "and extending across" refers to the subject "ditch." If we were seated in an English class and the teacher instructed us to read the at issue passage and then asked "what forms the west boundary and extends across lot 15?" And we all replied Lot 15, she would not be pleased. This is the answer the City of Sulphur says is correct in this case. To give the City a passing grade we also would have to delete or assign no meaning to the phrase "10 feet east of and *along* the east bank of the drainage ditch." The sketch above reflects at all points to the immediate north of plaintiffs' property the city's sewer line runs approximately 10 feet *along* the boundary of the ditch and at all points south of plaintiffs' property line throughout the entire subdivision development the sewer line runs in the same manner. Only on plaintiffs' property does it fail to follow the drainage ditch and streaks across it to connect with a sewer manhole located at the dead end of Diane Lane and plaintiffs' lot.

Good grammar forbids us from interpreting the document in the manner the City advances; the codal articles prevent us from enlarging the servitude to correct the obvious failure of the City to acquire a right of way that allowed it to travel the shortest distance to the existing sewer manholes. La.Civ.Code art. 730 provides "[d]oubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate." The comments to that article state in pertinent part as follows:

> (b) It is a cardinal rule of interpretation that, in case of doubt, instruments purporting to establish predial servitudes are always interpreted in favor of the owner of the property to be affected. The rule incorporates into Louisiana law the civilian principle that any doubt as to the free use of immovable property must be resolved *in favorem libertatis*. See Domat, Les lois civiles dans leur ordre naturel, 1 Oeuvres de Domat 329 (ed. Remy 1828); 2 Toullier, Droit civil francais192 (1833). The Louisiana Supreme Court has repeatedly declared that "servitudes are restraints on the free disposal and use of property, and are not, on that account, entitled to be viewed with favor by the law." Parish v. Municipality No. 2, 8 La.Ann. 145, 147 (1853), cited with approval in Buras Ice Factory, Inc. v. Department of Highways, 235 La. 158, 103 So.2d 74 (1958). See also McGuffy v. Weil, 240 La. 758, 767, 125 So.2d 154, 158 (1960): "any doubt as to the interpretation of a servitude encumbering property must be resolved in favor of the property owner". The rule that the proper interpretation of an ambiguous instrument is that which least restricts the ownership of the land has been applied by Louisiana courts in a variety of contexts. See, e.g., Whitehall Oil Co. v. Heard, 197 So.2d 672 (La.App.3rd Cir.), writ refused, 250 La. 924, 199 So.2d 923 (1967) (determination of the question whether a landowner created a single servitude over contiguous tracts or a series of multiple interests).

Allowing the City to change the "place" of the servitude is not an option; and, even if we were to find the servitude is ambiguous, the City's decision to place it across plaintiffs' property was made at its peril.

**DECREE**

For the foregoing reasons, the judgment of the trial court is reversed and the case is remanded for further proceedings.  Costs of this appeal are assessed against appellee, the City of Sulphur.

**REVERSED AND REMANDED.**

JOHN C. MCMULLEN AND MELANIE MCMULLEN

VERSUS

CITY OF SULPHUR

EZELL,J., dissenting.


This is a case where a son purchases a lot from his father and neither checked the public records to see if the property was encumbered by a servitude. The record is clear that the father, William McMullen, was very familiar with the subdivision in which Lot 15 was located. Mr. William McMullen had built approximately 150-200 homes within this particular subdivision. When William purchased this lot in question, he also purchased two other lots adjacent to the lot involved in this suit. The record reflects that William McMullen became aware of the sewer line in the early 90's. It is also clear that William McMullen was aware of the manhole covers at the southeast corner of Lot 15 and the one close to the northwest corner of Lot 15.

William McMullen was the successor in title to Lot 15, by way of a cash deed, signed on March 26, 1995. He never had a title check done on the property, but at page 37 of the record he admits that he knew about both manhole covers before he purchased the property. It is also clear that this was a switch of his testimony from page 25 of the record, where he denied knowing about the northwest manhole cover. The change in his testimony was prompted by cross-examination, when the attorney for the City of Sulphur told him his father was going to testify differently. The

attorney did not lie.

The majority of the opinion that the servitude, which was dated August 31, 1963, and filed in the public record on October 29, 1963, does not put the Plaintiffs on notice that they have a servitude that "extends across" Lot 15 of Block "A" of Forest Hills Subdivision. I do not agree with that opinion. The opinion of *Collins v. Slocum*, 284 So.2d 98 (La.App. 3 Cir. 1973), is still good law and should be followed in this case. The City in this case was given a servitude which allowed them to cross Lot 15, and it did not have to delineate where they were going to cross Lot 15. The public records are there to put those who are purchasing property on notice that the property they are about to purchase has a title default or may be encumbered by a servitude. This case is no different than that which was presented in the *Collins* case. I might also point out that this suit was a suit for trespass, and it is clear that the City had the right to have a sewer line run across Lot 15.

We are not in an English class, and I am not sure that I would answer Judge Cooks' question with a reply of "Lot 15." However, if the Plaintiff had taken the time to find the servitude in the public records and read the description and knew that there was a manhole cover close to the northwest corner and another manhole cover at the southeast corner, then they would certainly be put on notice that the servitude extended across Lot 15. The failure on the part of the purchasers, father and son, to even check the public records is the problem in this case not the description given in the properly filed servitude.

For these reasons, I must respectfully dissent from the majority opinion.