1 LANDRIEU, Judge.
The plaintiff, Dr. F.E. Palomeque appeals from the denial of his petition for a permanent injunction prohibiting the defendant, Chef Paul E. Prudhomme, from bricking over windows in the common wall between Dr. Palomeque’s condominium and Prud-homme’s property. The properties located at 420 and 422 Chartres were originally two of three four-story brick buildings constructed with common walls in 1834. At some point in time the top three floors of 420 Chartres and top two floors of 422 Chartres were removed. The property at 422 Chartres was converted into a condominium complex in 1972 and it is probable that the windows were created at that time,[1] although Dr. Palomeque submits a photo purportedly circa 1964 indicating the existence of one window.
Prudhomme first applied to the Vieux Carre Commission (VCC) in 1985 for approval of a second story addition to 420 Chartres. Although permission was granted, no work was done until 1991 when, in accordance with VCC ^approval, the facades of 416-18 and 420 Chartres Street were dismantled and new facades, including a second story facade at 420 Chartres, were constructed. The application for this work noted that “the window openings in the new Second Floor facade of 420 Chartres Street will be closed on the rear side with black painted plywood panels until the Second Floor is roofed over and enclosed (future work; separate permit).” With VCC approval, Prudhomme obtained a permit from the Department of Safety and Permits to “close party wall windows.”
Dr. Palomeque obtained a TRO in January 1994 and subsequently, in February 1994, a preliminary injunction to block the closure of the window. Chef Prudhomme appealed the granting of the preliminary injunction. The trial court subsequently denied the petition for the permanent injunction and, thus, Prudhomme’s appeal from the preliminary injunction (which was consolidated by this Court with Palomeque’s appeal from permanent injunction) is moot.
On appeal from the denial of a permanent injunction, Palomeque argues that because the windows have been in place for ten years he has acquired servitudes of light and view. He concedes that such servitudes could not be acquired by prescription in a private wall, *1266 but contends that “[ajn opening in a common wall is an exterior sign of a servitude, because the co-owner of such a wall is forbidden to make any openings without the consent of the co-owner, thus the servitude of light in a common wall is by definition apparent and may be acquired by informal destination of the owner or by prescription.” He asserts that the ten-year prescriptive period, which requires good faith and just title, is applicable because we must presume good faith.[2]
IsPalomeque’s argument, although superficially persuasive, is inherently flawed. In effect, Palomeque contends that in the absence of any evidence to the contrary the openings in the common wall were necessarily made without consent of the co-owner. Based on this premise, Palomeque argues that the presence of windows in the common wall for more than ten years has allowed him to acquire servitudes of light and view such that the co-owner of the common wall cannot rebuild the second story of the adjacent building. This result, however, is contrary to Louisiana law which historically has favored the free and unrestrained use of immovable property and requires that any doubt as to the existence of a predial servitude be resolved in favor of the property owner encumbered by the alleged servitude. See McGuffy v. Weil, 240 La. 758, 125 So.2d 154, 158 (1960); La.Civ.Code Ann. art. 730 (West 1980).[3]
Further, Palomeque’s argument is logically inconsistent. Acquisitive prescription of ten years requires good faith, just title, and a thing susceptible of acquisition by prescription. La.Civ.Code Ann. art. 3475 (West 1994). Under the applicable codal articles, a co-owner of a common wall is prohibited from infringing upon the rights of his neighbor or making any opening in the wall without the consent of his neighbor. La.Civ. Code Ann. arts. 680, 681 (West 1980). Assuming good faith on the part of all parties and in the absence of evidence to the contrary, we presume that the original opening in the common wall was made with at least the tacit permission of the co-owner (Prud-homme’s ancestor in title). Acquisitive prescription does not run in favor of a precarious possessor (one who exercises possession over a thing with permission of the owner) or his universal successor, La.Civ.Code Ann. art. 14-3477 (West 1994), and therefore Palo-meque’s claim of servitudes acquired through adverse possession of the windows is invalid. In any event, the creation of an opening in a common wall without permission of the co-owner is intrinsically an act of bad faith[4] and, accordingly, the ten year prescription period is not applicable. We pretermit the questions of whether Palomeque’s title would meet the requirements essential to support prescription of ten years and whether a servitude of light and view can be acquired by acquisitive prescription.
For the foregoing reasons, the appeal from the judgment granting the preliminary injunction is dismissed and the judgment denying a permanent injunction is affirmed.

AFFIRMED.

. In 1972, the Vieux Carre Commission granted permission for work to be performed on 422 Chartres including "structural repairs and alterations to brick masonry” and "installing] new openings and reopen those previously closed.”

. Counsel conceded in oral argument that the evidence could not sustain a 30 year period of possession.

. "The Louisiana Supreme Court has repeatedly declared that servitudes are restraints on the free disposal and use of free property, and are not, on that account, entitled to be viewed with favor by law.” La.Civ.Code Ann. art. 730, Rev. Comment (b) (citations and internal quotation marks omitted).

.Good faith, determined in light of objective considerations, is a rebuttable presumption. See La.Civ.Code arts. 3480, 3481 and the respective revision comments.