# Supreme Court of Louisiana

The Opinions handed down on the **5th day of May, 2015**, are as follows:

**BY CLARK, J.**:

2014-C -1499      JOHN WALTER BOUDREAUX v. PAUL CHRISTOPHER CUMMINGS (Parish of Vermilion)

Retired Judge H. Charles Griffin, assigned as Justice ad hoc, sitting for Guidry, J., recused.

For the foregoing reasons, we find Boudreaux was a precarious possessor of the predial servitude, who never gave actual notice of his intent to possess on his own.  Accordingly, acquisitive prescription could not and did not run in his favor.  We reverse the court of appeal's judgment and render judgment in favor of Cummings.
REVERSED AND RENDERED

KNOLL, J., dissents and assigns reasons.
WEIMER, J., concurs and assigns reasons.
HUGHES, J., dissents for reasons assigned by Knoll and Crichton.
CRICHTON, J., dissents and assigns reasons.

05/05/15

SUPREME COURT OF LOUISIANA

NO. 2014-C-1499

JOHN WALTER BOUDREAUX

VERSUS

PAUL CHRISTOPHER CUMMINGS

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THIRD CIRCUIT, PARISH OF VERMILION

**CLARK, Justice**[*]

We granted certiorari to determine whether the lower courts erred in recognizing the plaintiff as the owner of a predial servitude over land owned by the defendant. For the reasons that follow, we find the laws on acquisitive prescription and precarious possession require reversal of the court of appeal's ruling. Accordingly, we reverse and render judgment in favor of the defendant.

## FACTS AND PROCEDURAL HISTORY

The plaintiff, John Boudreaux (hereinafter referred to as "Boudreaux"), filed suit against the defendant, Paul Cummings (hereinafter referred to as "Cummings"). In the lawsuit, Boudreaux sought recognition of a predial servitude/right of way by virtue of acquisitive prescription and a permanent injunction prohibiting Cummings from interfering with his use of the right of way. Specifically, Boudreaux avers that since at least 1948, he and his ancestors in title have been using a pathway and gate to cross the neighboring property that belongs

---

[*] Retired Judge H. Charles Gaudin, assigned as Justice ad hoc, sitting for Guidry, J., recused.

to Cummings and his ancestor in title, the Weills.[1]  Testimony established that Boudreaux, his family, and farmers employed by Boudreaux used the right of way to transport farm equipment, to get to and from town for personal errands, and for convenient access to the adjacent road.  In 1969, the Weills asked Boudreaux to move the right of way.  Boudreaux acquiesced in the request and continued to use the pathway until 2012, when Cummings locked the gate and prevented Boudreaux's use.

Based on the foregoing, Boudreaux alleges that he adversely possessed the predial servitude for thirty years and is entitled to ownership thereof.[2]

Cummings filed a motion for summary judgment, contending that Boudreaux was a precarious possessor.  As such, he argues acquisitive prescription never began to run in Boudreaux's favor.  The trial court denied the motion for summary judgment, finding genuine issues of material fact remained.  The matter went to trial on July 8, 2013.  The trial court found precarious possession was irrelevant to a discussion of ownership of an incorporeal immovable, such as a predial servitude.  The trial court rendered judgment in favor of Boudreaux, ruling that the Boudreaux estate acquired a right of way over the Cummings estate by way of acquisitive prescription.

Cummings appealed.  The court of appeal affirmed the judgment. *Cummings v. Boudreaux*, 13-1291 (La. App. 3 Cir. 6/11/14), 138 So.3d 797.  In affirming, the majority held that, under the manifest error standard, there was adequate evidence for the trial court to conclude that Boudreaux was using the

---

[1]  The trial transcript and briefs indicate the surname of the ancestor in title is "Wilde". However, the public record filings in the record before us use the surname of "Weill," which we adopt throughout our opinion.

[2] For ease of reading, we employ the word "possession" in reference to Boudreaux's use of the right of passage.  However, we observe that the proper civilian term when speaking of possession of a real right is "quasi-possession." *See* La.Civ.Code art. 3421 ("[t]he exercise of a real right, such as a servitude, with the intent to have it as one's own is quasi-possession. The rules governing possession apply by analogy to the quasi-possession of incorporeals.")

2

right of passage on his own behalf, rather than as a precarious possessor. The court of appeal cited to record testimony regarding Boudreaux and his family's use of the right of way for over thirty years and found that the Weills' awareness of the use was "sufficient to show the elements of acquisitive prescription [had] been met." Judge Amy dissented, finding Boudreaux had permissive use of the passage and, therefore, could not satisfy the requirements to prove ownership by acquisitive prescription.

Cummings filed the instant writ application, contending the lower courts erred. We granted certiorari to determine whether a predial servitude was established by acquisitive prescription. *Boudreaux v. Cummings*, 14-1499 (La. 11/7/14), 152 So.3d 163).

## APPLICABLE LAW

When reviewing courts find that a reversible error of law was made in the lower court, appellate courts are required to re-determine the facts *de novo* from the entire record and render a judgment on the merits. *Rosell v. ESCO*, 549 So. 2d 840 (La. 1989).

Louisiana Civil Code Article 740 provides: "Apparent servitudes may be acquired by title, by destination of the owner, or by acquisitive prescription." Louisiana Civil Code Article 742 provides: "The laws governing acquisitive prescription of immovable property apply to apparent servitudes. An apparent servitude may be acquired by peaceable and uninterrupted possession of the right for ten years in good faith and by just title; it may also be acquired by uninterrupted possession for thirty years without title or good faith."

Louisiana Civil Code Article 3437 defines precarious possession as "the exercise of possession over a thing with the permission of or on behalf of the owner or possessor." "Acquisitive prescription does not run in favor of a precarious possessor or his universal successor." La. Civ. Code art. 3477.

3

Excluding a co-owner, any precarious possessor or his universal successor may commence to prescribe when he gives actual notice to the person on whose behalf he is possessing that he intends to possess for himself. La. Civ.Code art. 3478.

## DISCUSSION

### *Standard of Review*

Despite the court of appeal's statement to the contrary, a review of the record indicates the trial court did not make a factual finding as to whether Boudreaux was a precarious possessor. Rather, the trial court found that precariousness does not apply to incorporeal immovables. However, the Louisiana Civil Code clearly states that the laws of acquisitive prescription of immovable property apply to apparent servitudes. La.Civ.Code art. 742. Precariousness, or the lack thereof, is a legal concept relevant to acquisitive prescription, and is, thus, applicable to apparent servitudes, such as the right of way over Cummings' land. See La.Civ.Code art.3477. Accordingly, the trial court legally erred, necessitating a *de novo* review by this court.

### *Nature of the Possession*

In resolving this matter, we must first determine whether Boudreaux was a precarious possessor of the predial servitude. If he was possessing precariously, the second step of the analysis tasks this court with ascertaining whether Boudreaux gave actual notice to the landowner (either Cummings or his ancestor in title) that he (or his own ancestor in title) was beginning to possess on his own behalf so as to commence the accrual of the acquisitive prescription period. See La.Civ. Code art. 3478.

Boudreaux asserts that his possession of the right of passage is presumed to be on his own behalf, pursuant to La.Civ.Code art. 3427, which provides, "[o]ne is presumed to intend to possess as owner unless he began to possess in the name of and for another." Thus, it is the landowner's duty to show that such use was

merely an accommodation. Boudreaux argues that Cummings' failure to object to his use of the right of way does not amount to consent by the landowner, *i.e.*, precarious possession.

Conversely, Cummings contends Boudreaux was merely using the right of way with his or the Weills' permission in a gesture of neighborly accommodation. Thus, acquisitive prescription could not run in Boudreaux's favor absent a showing of actual notice of his commencement of adverse possession.

We disagree with Boudreaux's characterization of the scenario as equating a "failure to object" with "permission." However, we do find support in the law for implied or tacit permission being the basis of precarious possession. The pre-1982 version of Louisiana Civil Code art. 3490 provided:[3]

> *The circumstances of having been in possession by the permission or through the indulgence of another person, gives neither legal possession nor the right of prescribing.*

> Thus, those who possess precariously, that is, by having prayed the master to let them have the possession, do not deprive him thereof, but, possessing by his consent, they possess for him. [Emphasis added].

Professor A.N. Yiannopoulos, in the Civil Law Treatise on Predial Servitudes, explained that the French article, on which the Louisiana article was based, more accurately translates as "acts that are the exercise of a prerogative, and *those of simple tolerance*, cannot be the foundation of either possession or prescription."[4] (Emphasis added). Yiannopoulos further explained in his discussion of precarious possession:

> Such a possessor may acquire neither ownership nor a servitude by prescription.

---

[3] The Civil Code articles on precarious possession were revised by La. Acts 1982, No. 187, effective January 1, 1983.

[4] 4.A.N. Yiannopoulos, Louisiana Civil Law Treatise, Predial Servitudes, § 139, (3d ed 1997).

Thus, one who uses a servitude of passage by virtue of a lease granted to him by the owner of the dominant estate may not acquire by prescription the servitude of passage for himself; and one who uses an aqueduct with the express or *tacit permission* of the owner of the estate on which the aqueduct is located may not, by prescription, acquire a servitude of aqueduct. *The owner of the estate on which the passage of aqueduct is located may tolerate certain invasions in the spirit of good neighborhood or in the pursuit of his own interests; in neither case is he presumed to have consented to a servitude. Moreover, the person who encroaches on the rights of the landowner with his express or tacit permission does not have the intent to acquire a servitude; he implicitly recognizes that the ownership of the estate is unencumbered and prescription does not run in his favor.*

Article 3490 of the Louisiana Civil Code of 1870, corresponding with Article 2322 of the French Civil Code, declared *that acts of simple tolerance could not be the foundation of either possession or prescription.* The purpose of this provision was to maximize the use of immovable property in the general interest. *If acts of simple tolerance were to be considered as acts of adverse possession, landowners would be compelled to object to innocent or occasional invasions for fear that their lands would be burdened with predial servitudes.*

*Id.* (Emphasis added).

Yiannopoulos further opined that while Article 3490 was not produced in the 1982 revision of the Louisiana Civil Code, he believed its absence was merely because the provision is "self-evident." *Id.* Moreover, Professor Symeon C. Symeonides explained the change in the law on precarious possession as follows:[5]

The articles of the old law dealing with precarious possession were spread out in three different parts of the Code and were quite repetitive. They could be found in the chapter on possession, [old articles] 3433, 3441, 3445-3446; in the subsection on the ten-year acquisitive prescription, [old articles] 3489-3490; and in the subsection on the causes which prevent acquisitive prescription, [old articles] 3510-3515. The new law is far more concise but still regulates precarious possession in two different parts of the Code, first in the title on possession, [new articles] 3428-3429, 3437-3440, and then in the title on prescription, [new articles] 3477-3479.

---

[5] Symeonides, *One Hundred Footnotes to the New Law of Possession and Acquisitive Prescription,* 44 La.L.Rev. 69, 81 (1983).

Symeonides, like Yiannopoulos, is of the opinion that the changes in the Civil Code regarding precarious possession were merely for organizational purposes, and not substantive changes. As such, we find the concept of implied permission as it relates to precarious possession is still a viable theory of our civilian law. Accordingly, even in the absence of express permission, tacit permission can be presumed under the limited circumstances where "indulgence" and acts of "good neighborhood" are present. As applied to the instant case, we find that Cummings' neighborly act of tolerance (and that of his ancestor in title, the Weills) cannot be, and is not, the foundation of adverse possession needed for the purposes of acquisitive prescription. Rather, Boudreaux was possessing the right of passage precariously.

Deconstructing the requisites of acquisitive prescription further bolsters our holding. Louisiana Civil Code article 742, as referenced above, provides "the laws governing acquisitive prescription of immovable property apply to apparent servitudes." Therefore, the attributes of possession are applicable. The possessor must intend to possess as owner and must take corporeal possession of the thing. La.Civ.Code art. 3424. The possession must be uninterrupted and free of vices, *i.e.*, continuous, public, peaceable, and unequivocal. La.Civ.Code arts. 3435 and 3476. The possession must be *adverse*; it must be an *unauthorized* use that infringes on the ownership of the servient estate.[6] (Emphasis added). One who merely exercises a right has nothing to prescribe. *Id.* With these governing principles in mind, we find support for the conclusion that Cummings' awareness of Boudreaux's use and his allowance thereof marks Boudreaux's use as an authorized use that cannot be characterized as adverse under the circumstances.

Further, we address the contention that Boudreaux's acquiescence in the request to move the gate is somehow dispositive of the issue. Mr. Cummings relies on this

---

[6] 4.A.N. Yiannopoulos, Louisiana Civil Law Treatise, Predial Servitudes, § 138, (3d ed. 1997).

act to show that Mr. Boudreaux complied with his request, revealing his status as a permissive user. Mr. Boudreaux, though, relies on the act to show that he owned the right of way and as the owner of the dominant estate, he was merely fulfilling his codal obligation of accommodating the servient estate. See art. La.Civ.Code art. 748 ("if the original location has become more burdensome for the owner of the servient estate . . . he [the owner of the servient estate] may provide another equally convenient location for the exercise of the servitude which the owner of the dominant estate is bound to accept.") With legal explanations supporting both sides of the issue, we do not find this fact offers any definitive resolution to the underlying issue of ownership of the right of way, and, is, thus, irrelevant to our analysis.

Having concluded that Boudreaux and/or his ancestor in title began his possession precariously, the second step in the two-fold analysis instructs us to determine whether actual notice was ever given to the landowner, be it Cummings or the Weills, that Boudreaux intended to possess for himself so as to authorize the commencement of the prescriptive period. La.Civ.Code art. 3478.

Louisiana Civil Code Article 3438 provides: "A precarious possessor, such as a lessee or a depositary, is presumed to possess for another although he may intend to possess for himself." Thus, by virtue of his status as a precarious possessor, Boudreaux is presumed to have possessed on behalf of Cummings, regardless of whether he intended to possess for himself. As such, testimony or evidence beyond Boudreaux's intent is required to terminate his precariousness. Boudreaux must have given actual notice of his intent sufficient to alert the landowner that his property was in jeopardy. *Delacroix Corp. v. Perez*, 98-2247, p. 10 (La. App. 4 Cir. 11/8/00), 794 So.2d 862, 869, *writ denied*, 00-3245 (La. 1/26/01), 782 So.2d 635, citing *Armstrong v. Armstrong*, 493 So.2d 253 (La. App. 3 Cir.), *writ denied*, 496 So.2d 353 (La. 1986). Apart from the continued use of

8

the right of way, we find nothing in the record that indicates actual notice was given to the landowner that Boudreaux intended to change the nature of his possession. Accordingly, we find Boudreaux never terminated his precarious possession by giving actual notice to Cummings or his ancestor in title, thereby preventing the commencement of acquisitive prescription.

Our holding today is strictly limited to the facts before us. We recognize the validity in both parties' arguments and admit the ownership of the right of passage was not a clear cut determination. However, La.Civ. Code art. 730 clearly states "[d]oubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate." This court has declared that "servitudes are restraints on the free disposal and use of property, and are not, on that account, entitled to be viewed with favor by the law." *Cont'l Grp., Inc. v. Allison,* 404 So. 2d 428, 440 (La. 1981), citing *Parish v. Municipality No. 2*, 8 La.Ann. 145, 147 (1853), cited with approval in *Buras Ice Factory, Inc. v. Department of Highways*, 235 La. 158, 103 So.2d 74 (1958).

## CONCLUSION

For the foregoing reasons, we find Boudreaux was a precarious possessor of the predial servitude, who never gave actual notice of his intent to possess on his own. Accordingly, acquisitive prescription could not and did not run in his favor. We reverse the court of appeal's judgment and render judgment in favor of Cummings.

**REVERSED AND RENDERED.**

05/05/15

**SUPREME COURT OF LOUISIANA**

**NO. 2014-C-1499**

**JOHN WALTER BOUDREAUX**

**VERSUS**

**PAUL CHRISTOPHER CUMMINGS**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THIRD CIRCUIT, PARISH OF VERMILION**

**KNOLL, J., dissenting.**

This case requires the Court to determine whether or not John Walter Boudreaux ("Boudreaux") possessed the real right at issue as "owner," thereby acquiring by acquisitive prescription of thirty years a predial servitude of passage,[1] or whether he exercised this real right merely as a "precarious possessor"—that is, "with the ***permission*** of or on behalf of"[2] Paul Christopher Cummings ("Cummings") and his ancestors in title, the Weills. In my view, the majority opinion eviscerates the well-established burden-shifting structure laid out in our Civil Code, allowing Cummings to prevail based simply on an assertion of "neighborliness," despite his failure to put on any ***evidence*** that Boudreaux used the passage way with ***"permission"*** as required by the Louisiana Civil Code article 3437. Accordingly, I respectfully dissent from the majority opinion and would affirm the District Court's judgment recognizing Boudreaux has obtained a predial servitude of passage by thirty years acquisitive prescription.

The party asserting acquisitive prescription bears the burden of proving all

---

[1] Both parties agree that because Boudreaux's alleged possession of the right of passage was without title and without good faith, Boudreaux must prove thirty years of uninterrupted possession in order for him to have obtained the real right by acquisitive prescription. La. Civ. Code art. 742.

[2] La Civ. Code art. 3437 (emphasis added).

facts that are essential to support it.[3] Because Boudreaux is the party asserting

acquisitive prescription, he bears the burden of proving all the facts that are

essential to support it, including possession for the requisite number of years.[4]

However, as the Third Circuit explained in *Town of Broussard v. Broussard*

*Volunteer Fire Dept.*, 357 So.2d 25 (La. App. 3 Cir. 1978), interpreting the

predecessor of Louisiana Civil Code 3427,[5] "The possessor is aided in this burden

by a presumption that he possessed as owner."[6] Under Louisiana Civil Code article

3427, "One is presumed to intend to possess as owner unless he began to possess

in the name of and for another." The 1982 Revision Comment (d) to article 3427,

however, provides that the presumption set forth in this article does not arise

"[w]hen it *is shown* that the possession was begun for another." (emphasis added).

If the presumption does arise, the opponent of the plea of prescription—here,

Cummings—then bears the burden of rebutting this presumption, which he may do

by *proof* that the proponent's possession *was precarious*. According to Louisiana

Civil Code article 3437, "The exercise of possession over a thing with the

permission of or on behalf of the owner or possessor is precarious possession." If

Cummings *proves* Boudreaux's possession was "with the permission of or on

behalf of the owner," only then does a presumption arise under Louisiana Civil

Code article 3438: "A *precarious possessor*, such as a lessee or a depositary, is

presumed to possess for another although he may intend to possess for himself."

(emphasis added). Should this presumption arise, Boudreaux could rebut it under

Louisiana Civil Code article 3439, provided he presented proof that he has given

"actual notice of [his intent to possess for himself] to the person on whose behalf

---

[3] *St. John Baptist Church of Phoenix v. Thomas*, 08-0687 (La. App. 4 Cir. 12/3/08), 1 So.3d 618, 623 (quoting *Phillips v. Fisher*, 93-928 (La. App. 3 Cir. 5/6/94), 634 So.2d 1305,1307)).
[4] *EOG Resources, Inc. v. Hopkins*, 48,577 (La. App. 2 Cir. 11/27/13), 131 So.3d 72, 80.
[5] In *Town of Broussard*, the Third Circuit was interpreting former La. Civ. Code art. 3488. According to 1982 Revision Comment (a) to La. Civ. Code art. 3427, "This provision reproduces the substance of Article 3488 of the Louisiana Civil Code of 1870. It does not change the law." Former La. Civ. Code art. 3488 provided: "As to the fact itself of possession, a person is presumed to have possessed as master and owner, unless it appears that the possession began in the name of and for another."
[6] *Town of Broussard*, 357 So.2d at 28.

he is possessing." (emphasis added).

Applying this burden-shifting framework, the threshold question is whether or not the presumption of ownership found within this article arises at all. According to Revision Comment (d) of Louisiana Civil Code article 3427, "When it *is shown* that the possession was begun for another, the presumption set forth in this article *does not arise*." (emphasis added). In positive terms, the presumption of ownership does arise *absent a showing* that the possession was begun for another. Therefore, the initial question is whether there is a positive showing on the record that Boudreaux's "possession was begun for another." Although Cummings strenuously *asserts* that Boudreaux began his possession with the permission of the Weills, neither the evidence nor the testimony at trial supports this assertion. While witnesses, including Boudreaux and his wife, agreed that the Weills and the Boudreauxs had a good relationship and some witnesses, including Boudreaux's wife, testified the Weills knew about Boudreaux's gate and his use/maintenance of the access road and did not object, no one testified that the Weills had ever granted Boudreaux permission to use the property. In fact, Boudreaux explicitly denied ever receiving the Weills' permission: "I never got any permission from him. We just used it."

Rather than put on evidence to rebut Boudreaux's testimony, Cummings called no witnesses of his own. The only exhibits he entered into evidence were grainy aerial pictures of the tract of land and a Tobin survey of the property from 1985. The sole episode to which Cummings points to support his argument that Boudreaux was permissively using the disputed strip of land is Boudreaux's agreement in 1969 at the request of Mr. Weill to move the location of the gate, which granted Boudreaux access to the Weills' property, closer to the Vermillion River. As the majority acknowledges, however, this evidence does not offer any support for Cummings' argument that Boudreaux's "possession was begun for

3

another" because this episode could just as easily be interpreted as evidence of Boudreaux's intent to possess as owner.[7]

Given the complete absence of evidence showing Boudreaux's "possession was begun for another" or with the permission of the Weills, the presumption of ownership must arise in Boudreaux's favor. Although the presumption alone is enough to shift the burden of proof to Cummings,[8] Boudreaux put on ample evidence in support of the presumption. Numerous witnesses testified that Boudreaux mowed the tract of land and maintained the property. Likewise, witnesses testified the Boudreauxs used the passage continuously for various purposes, including hauling farm equipment, making visits to the doctor, going to vote, running errands, etc. Keith Melebeck entered into an agreement in 1999—an agreement which endured till Cummings locked Boudreaux's gate in 2012—to mow the road for Boudreaux in exchange for Boudreaux's permission to keep mowing equipment on Boudreaux's property. Melebeck testified that Boudreaux told him during this period that the strip has "been a right of way for a hundred years, that they've been using [it] since, you know, since their family owned the property." In 1980, when Boudreaux feared the Weills' sale of another piece of property might hinder his ability to use the passage adjacent to his own property, Boudreax appeared at a meeting of the Abbeville Harbor and Terminal District (the

---

[7] Indeed, Boudreaux and Weill's interaction during this episode is perfectly consistent with what the Code would require if Boudreaux actually owned a right of passage across Weill's property. Under Louisiana Civil Code article 748,

> The owner of the servient estate may do nothing tending to diminish or make more inconvenient the use of the servitude.
>
> If the original location has become more burdensome for the owner of the servient estate, or if it prevents him from making useful improvements on his estate, he may provide another equally convenient location for the exercise of the servitude which the owner of the dominant estate is bound to accept. All expenses of relocation are borne by the owner of the servient estate.

Here, according to Boudreaux and to his wife, Weill proposed a location for the gate that was closer to the Vermillion River, Boudreaux accepted this proposed location, and Weill paid for some of the expenses of rebuilding the gate. In order for Cummings to prove Boudreaux was not entitled to the presumption of ownership, it would seem logical that he should have to make a showing that Boudreaux's actions were somehow inconsistent with those required of the holder of the right which Boudreaux seeks to acquire.

[8] *See* 2 La. Civ. L. Treatise, Property § 320 (4th ed.) ("Article 3427 declares that one is presumed to intend to possess as owner unless he began to possess in the name of and for another. A person who exercises factual authority over property may rely on this presumption and opt not to introduce any evidence as to his intent to possess as owner.").

"Terminal District") to express his concerns about road construction that might obstruct his access to the passage on the Weills' property. Jospeh Schexnaider was a registered civil engineer who worked for the Terminal District to whom the Weills sold a piece of property for the construction of the Port of Vermillion. Consistent with Boudreaux's own testimony, Schexnaider testified that he was present at this meeting with Boudreaux and that Boudreaux "was concerned whether the roads we were building were going to be public or private, and, in either case, would he still be allowed access to go ahead and go through the [Weills'] property and access his property as he had been doing before we got there." In response to a question from Cummings' counsel about whether he ever questioned the Terminal District as to whether or not he had access to the Weills' property, Schexnaider responded, "No. He didn't question us whether he had access or not. He told us that he had access, and he was concerned about being able to reach that access point through the port property." Indeed, in 1980, soon after the amendment to Louisiana Civil Code Article 740[9] which would have allowed the Boudreaux's right of use to begin prescribing, Boudreaux's interests in using the property were adverse to the Weills' interests in selling property that would potentially encumber its use. This evidence strongly supports Boudreaux's position that, regardless of the Weills' knowledge, Boudreaux was using this property for his own benefit—possessing the right for himself without interruption.

Because Cummings failed to prove that Boudreaux was not entitled to the presumption of ownership, the burden shifted to Cummings to rebut the presumption, which he must do by *proof* that Boudreaux's possession was precarious. Although Cummings asserts that Boudreaux and the Weills were good neighbors and that Boudreaux and Cummings also were on neighborly terms prior

---

[9] Because a right of passage is a discontinuous apparent predial servitude, Louisiana law did not provide for prescription of this right until the 1977 revision of Louisiana Civil Code article 740 went into effect on January 1, 1978. Therefore, Boudreaux's possession of the right of passage could not have begun to become effective until this time.

to litigation, Cummings put on ***no evidence*** whatsoever that Boudreaux's possession was begun with the permission of the Weills or of Cummings. The majority's decision to countenance Cummings' unsupported ***argument*** is gravely misguided and severely jeopardizes the law on acquisitive prescription in this state by allowing any property owner to avoid prescription by simply ***arguing*** that his opponent's use of the property was allowed in the spirit of neighborliness. Not only is this contrary to the plain language of article 3437 and its definition of a precarious possessor as one who possesses with "permission," but its effect would also negate the 1977 revision to article 740, which made discontinuous apparent servitudes susceptible to acquisitive prescription, by making it virtually impossible for a person to be able to prove the elements of acquisitive prescription with respect to such a real right.

At its core, this case concerns a problem of proof. According to the plain language of article 3437, Cummings had to prove that Boudreaux possessed the property between 1978 and 2008 "with the permission" of Cummings and his ancestors in title. Cummings failed to meet his burden. Therefore, Boudreaux should prevail on his action to obtain recognition of his right of passage. Accordingly, I would affirm the judgments of the lower courts.

05/05/15

SUPREME COURT OF LOUISIANA

NO. 2014-C-1499

JOHN WALTER BOUDREAUX

VERSUS

PAUL CHRISTOPHER CUMMINGS

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, THIRD CIRCUIT, PARISH OF VERMILION*

**WEIMER, J.**, concurring.

The opinion articulates the correct legal standards to apply to this vexatious dispute between neighbors. Both explicit permission and tacit permission deriving from acts of "good neighborhood" by an owner can defeat the claim of someone who contends he benefits from adverse possession so as to acquire a servitude of passage upon the owner's property. **Boudreaux v. Cummings**, No. 14-1499, slip op. at 7 (La. 3/17/15). Given the legal standards, I write to emphasize certain facts. Most notably, I respectfully disagree with the dismissal by both the opinion and the dissents of certain extensive record evidence regarding the placement of the gate. The sole basis for rejecting the record evidence of collaboration in the placement of the gate is the view that such collaboration is not dispositive of Mr. Boudreaux's status as a permissive user because the collaboration could just as easily be interpreted as evidence that Mr. Boudreaux, as owner of the right of way and of the dominant estate, was merely fulfilling his codal obligation of accommodating the servient estate. See, La. C.C. art. 748. However, while the interactions between Mr. Boudreaux and Mr. Weill during this episode may be consistent with what the

Civil Code would require if Mr. Boudreaux *actually owned* a right of passage across Mr. Weill's property, the fact is that a right of passage is a discontinuous apparent predial servitude and Louisiana did not provide for acquisitive prescription of this right until the 1977 revision of Louisiana Civil Code article 740 went into effect on January 1, 1978. See, La. C.C. art. 740, Revision Comments (a). Because Mr. Boudreaux's possession of the right of passage could not have begun to become effective until 1978, his actions in 1969 with respect to the placement of the gate simply *could not* be interpreted as evidence of Mr. Boudreaux's intent to possess as owner. In other words, Mr. Boudreaux cannot avail himself of the presumption that his possession of the passageway was with the intent to possess as owner at a time when the law did not allow him to acquire a servitude of passage by acquisitive prescription.

Far from being irrelevant and non-dispositive, I find the record evidence regarding the collaborative nature of the gate's placement, its construction, and its later use to be direct and relevant evidence that Mr. Boudreaux used the passageway with "permission" as required by La. C.C. art. 3437, regardless of whether that evidence was adduced on direct or cross examination.[1] Further, I find that the evidence of neighborly acts on the part of the successive property owners (Mr. Weill and Mr. Cummings) effectively rebuts any presumption that might

---

[1]     In England and in about one-fifth of the states, cross-examination is wide open. Louisiana follows the wide open rule of cross-examination. …

Under the rule that permits cross-examination on all issues in the case, the right of a thorough and sifting cross-examination, which belongs to every party as to the witnesses against him, is especially applicable where the witness is the opposite party to the cause on trial who has testified for the purpose of making out his own case.

ELDON E. FALLON, LOUISIANA PRACTICE TRIAL HANDBOOK FOR LOUISIANA LAWYERS § 17:2 (3d ed. 2007) (footnote omitted; emphasis added).

It is axiomatic, therefore, that in our *de novo* review, we can consider evidence adduced during both direct and cross-examination when applying the facts to the law.

otherwise arise from the fact of Mr. Boudreaux's possession, notwithstanding Mr. Boudreaux's self-serving protestation of his clandestine intent to possess as owner.

Mr. Boudreaux testified that when he moved to the property in 1969, he "rebuilt the fence." Mr. Boudreaux admitted much more than the rebuilding of the fence was accomplished because he worked collaboratively with the landowner:

> Me and Mr. Bob Weill [Cummings' ancestor in title] got together, and the fence was in bad repair, and he allowed me to clear some trees on him and on me and to rebuild the fence, which he gave me part of the material to help me build the fence. And he also asked me to move the gate a little further to the east, toward the end of his property closer to the river, which I did.

Presumably, the clearing of trees "on him" and "on me" referred to clearing trees on Mr. Weill's land and on Mr. Boudreaux's land, respectively. In any event, the quoted testimony indicates that establishing a passageway in 1969 was a collaborative effort between Mr. Boudreaux and Mr. Weill because Mr. Weill even supplied materials. Thus, because this gated access point was established in 1969 and the passage beyond the gate has remained there to this day, the circumstances of its establishment were collaborative and, therefore, indicative of both permission[2] and acts of "good neighborhood," rather than of adverse possession.

Physical possession of a thing, such as land, the Civil Code informs us, involves as a general proposition "physical acts of use, detention, or enjoyment over a thing." La. C.C. art. 3425. More specifically, for purposes of acquisitive prescription as claimed by Mr. Boudreaux here, "[t]he possession must be continuous, uninterrupted, peaceable, public, and <u>unequivocal</u>." La. C.C. art. 3476 (applicable to prescription of ten years in good faith and under just title) (emphasis

---

[2] Although the opinion correctly applies a de novo review, I note the trial court aptly observed: "So I think that the fact that the Weills and Mr. Cummings and everyone along the way permitted this is exactly what happened."

3

added); see also La. C.C. art. 3488 (generally rendering the "rules governing acquisitive prescription of ten years appl[icable] to the prescription of thirty years"). The Code further emphasizes that "[p]ossession that is … equivocal has no effect," (La. C.C. art. 3435) and "[p]ossession is … equivocal when there is ambiguity as to the intent of the possessor to own the thing." La. C.C. art. 3436.

The facts recounted above about the origin of the passageway between the Weill and Boudreaux properties indicate the passageway was constructed with the permission of Mr. Weill, at a place designated by Mr. Weill, and even with some materials supplied by Mr. Weill. Given these facts, Mr. Boudreaux's possession was, at best, equivocal. As to this point, Comment (e) to La. C.C. art. 3476 dispels any doubt: "**The exercise of possession over a thing with the permission of … the owner … is precarious possession.**" (Emphasis added.) Precarious possession defeats the possibility of acquiring a servitude through acquisitive prescription: "Acquisitive prescription does not run in favor of a precarious possessor … ." La. C.C. art. 3477.

Therefore, Mr. Boudreaux's possession began as precarious possession because it originated from Mr. Weill's consent. The record reflects no change in the permissive nature of Mr. Boudreaux's use of the passageway. Indeed, by Mr. Boudreaux's own admission, the passageway continued to be used by explicit permission and as an act of "good neighborhood" on behalf of Mr. Weill, as follows.

Mr. Boudreaux testified to having used the passageway to "bring tractors and combines across there and harvest my rice." Significantly, Mr. Boudreaux also testified using the passageway to assist with farming on Mr. Weill's property as follows: "I would go back across there when he was harvesting his rice and help

4

him." In fact, according to Mr. Boudreaux, the passageway was used for the benefit of both himself and Mr. Weill, because "the Duhon boys" who harvested Mr. Weill's land also "harvested my [Mr. Boudreaux's] crop with their combines."

To reiterate, the opinion utilizes has identified the correct legal standard for evaluating these facts. Explicit permission and tacit permission deriving from acts of "good neighborhood" by an owner can convey no more than equivocal possession (La. C.C. art. 3476) and, in turn, precarious possession gains no foothold for acquisitive prescription. La. C.C. art. 3477. The concept of acquisitive prescription is ancient, and the rationales for preventing permissive and neighborly uses to allow the user to wrest away ownership rights have also been long recognized. As Planiol noted:

> The Ancients said of prescription that it was the patroness of the
> human species. … Acquisitive prescription … plays an important
> social role. Without it no patrimony would be safe from unforeseen
> revindications. It is certain that there are times when prescription may
> avail a possessor without title and in bad faith. It would then afford a
> shield to a spoliator. But such instances are of rare occurrence. And
> it would happen even more infrequently that the owner despoiled
> through prescription had not been guilty of negligence. Why did he
> remain for such a long time without performing an act of possession
> as regards his thing or without laying claim to it? A sufficient delay is
> allowed him within which to learn of the usurpation committed against
> him and in which to protest against it.

M. PLANIOL, TREATISE ON THE CIVIL LAW § 2645 at 571-572 (La. St. L. Inst. Trans. 1959).

Here, Mr. Weill was not "guilty of negligence" in disregarding his property. *Id.* Nor can it be said Mr. Weill "remain[ed] for such a long time without performing an act of possession as regards his thing or without laying claim to it." *Id.* Rather, in the spirit of being a good neighbor, Mr. Weill permitted and even aided Mr. Boudreaux in constructing the passageway. As Mr. Boudreaux admitted,

5

rather than being used adversely, the passageway was frequently used as a means for maintaining good relations between the adjacent property owners:

> Q. [Cummings' counsel] You considered yourself a good neighbor of the Weills?
> A. [Mr. Boudreaux] We always got along well with the Weills.
> Q. And Mr. Weill would have thought the same, you think, of you?
> A. Yes. He and his wife came drink [sic] coffee often.
> . . . .
> Q. [Boudreaux's counsel] When the Weills came drink [sic] coffee at your house, how did they get to your house?
> A. [Mr. Boudreaux] Sometimes-sometimes they actually walked. Because Mr. Weill and his wife liked to exercise, and they would walk a lot. Sometimes they would park on the right of way and walk, and sometimes they would come down the public road.
> Q. Did they pass through that gate that you were talking about?
> A. Sometimes they did, yes.

Our venerable Civil Code generally encourages moral conduct and deters immoral conduct. Consider the consequences of a determination that one is engaged in a bad-faith breach of an obligation[3] or is a bad-faith seller in a redhibition action.[4] The Civil Code increases damages in those situations.[5] The law of lesion beyond moiety reflects a moral component by protecting a seller of an immovable from falling prey to a buyer whose price is out of line with certain

---

[3] "An obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform." La. C.C. art. 1997.

[4] La. C.C. art. 2545, provides, in pertinent part:

> A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees.

[5] Compare La. C.C. art. 1997 with Article 1996 ("An obligor in good faith is liable only for the damages that were foreseeable at the time the contract was made."). Compare La. C.C. art. 2545 with Article 2531 ("A seller who did not know that the thing he sold had a defect is only bound to repair, remedy, or correct the defect.").

market standards.[6] The denial of spousal support to one who is at fault for the demise of a marriage also has a moral component.[7] The Civil Code further reflects a moral component in recognizing natural obligations.[8]

By comparison, the law of acquisitive prescription allows the taking of another's property even if done in bad faith. Such departure from what could be considered moral conduct exists to serve other societal purposes, including quieting titles to property which has been abandoned and keeping property in production, and reflects a populist philosophy.

To balance what could be perceived a departure from moral underpinnings, the Civil Code mandates that possession be public and unequivocal, not silent and clandestine.[9] See La. C.C. arts. 3435 and 3436.

The Civil Code does not contemplate depriving an owner of full enjoyment of property simply because the owner has acted as a good neighbor in allowing use of the property. Had Mr. Boudreaux wished to depart from the neighborly use allowed him by Mr. Weill and by Mr. Cummings, the Civil Code afforded him such a procedure. Under La. C.C. art. 3478, a "precarious possessor, or his universal

---

[6] "The sale of an immovable may be rescinded for lesion when the price is less than one half of the fair market value of the immovable." La. C.C. art. 2589.

[7] "When a spouse has not been at fault prior to the filing of a petition for divorce and is in need of support, based on the needs of that party and the ability of the other party to pay, that spouse may be awarded final periodic support ... ." La. C.C. art. 112(A).

[8] "A natural obligation arises from circumstances in which the law implies a particular moral duty to render a performance." La. C.C. art. 1760. "[W]hatever has been freely performed in compliance with a natural obligation may not be reclaimed." La. C.C. art. 1761.

[9] Possession which is clandestine within the meaning of La. C.C. arts. 3435 and 3436 is defined in the landmark DICTIONARY OF THE CIVIL CODE, translated under the supervision of noted civilian scholars Alain Levasseur and Marie-Eugenie Laporte-Legeais, as a "[v]ice affecting possession (and constituting an obstacle to acquisitive prescription) when the acts of possession are hidden from those who would have an interest in preventing *usucapion* – acquisitive prescription, from occurring." GERARD CORNU, DICTIONARY OF THE CIVIL CODE 102 (transl. Alain Levasseur and Marie-Eugenie Laporte-Legeais, LexisNexis 2014).

successor, may commence to prescribe when he gives actual notice to the person on whose behalf he is possessing that he intends to possess for himself." Mr. Boudreaux adduced no evidence of having given such notice to Mr. Weill. Mr. Boudreaux did not unequivocally manifest an intent to possess, as owner, the passageway on Mr. Weill's land, either when sharing a neighborly cup of coffee or in a more conspicuous setting.

In conclusion, from my review of the relevant Codal articles and of the principles on which those articles are based, I find the adage that "no good deed goes unpunished" has yet to be incorporated into Louisiana's law of acquisitive prescription. Allowing a neighborly use of one's property is instead encouraged by the Civil Code, which does not deprive an owner of a property right for having acted as a good neighbor. Thus, I respectfully concur.

05/05/15

SUPREME COURT OF LOUISIANA

NO. 2014-C-1499

JOHN WALTER BOUDREAUX

VERSUS

PAUL CHRISTOPHER CUMMINGS

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THIRD CIRCUIT, PARISH OF VERMILION

**Hughes, J., dissents for the reasons assigned by Knoll, J. and Crichton, J.**

STATE OF LOUISIANA

NO. 2014-C-1499

JOHN WALTER BOUDREAUX

VERSUS

PAUL CHRISTOPHER CUMMINGS

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THIRD CIRCUIT, PARISH OF VERMILION

CRICHTON, J., dissenting:

Boudreaux unwaveringly declared he was never given permission to use the passageway, and he and his ancestors in title always used the passageway as if it was their own. From an evidentiary standpoint, Boudreaux's unambiguous declaration of his intent to possess as owner coupled with the legal presumption that he was possessing as owner caused the burden to shift to the defendant, Cummings, to marshal sufficient evidence to chip away, if not to erode, this presumption. This ultimately led to what I believe to be and, more importantly, what the trial court believed to be, a preponderance of evidence favoring Boudreaux. Cummings failed to present even a scintilla of evidence, instead engaging in mere argument, leaving the trial court with only one choice.

Accordingly, based on this record, I respectfully dissent and would affirm the lower courts.